176 N.J. Super. 495 (1980)
423 A.2d 1008
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MELVIN EARL PHILLIPS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 7, 1980.
Decided December 11, 1980.
*497 Before Judges FRITZ, POLOW and JOELSON.
Elliott G. Heard, Jr., attorney for appellant.
John J. Degnan, Attorney General of New Jersey, attorney for respondent (Mary Ann Kenny Pidgeon, Deputy Attorney General, of counsel).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Insisting through counsel that, "There is no plea bargain," defendant entered a plea of guilty to counts of an indictment charging him with rape, robbery while armed, assault with an offensive weapon and unlawful possession of a weapon, but entered no plea at that time respecting other counts charging him with kidnapping and threatening to take a life. This was on October 26, 1978. For reasons that will appear, he was not sentenced until August 27, 1979. At that time he was sentenced to State Prison for 10 to 30 years for the rape, for a consecutive three to seven-year term for the robbery and for a further consecutive term of two to five years for the armed feature, as well as a concurrent two to five years for the unlawful possession of a weapon. The count charging him with assault with an offensive weapon was dismissed as one that would have in any *498 event merged with the robbery, as were the counts for kidnapping and threatening to take a life.
Defendant now appeals, setting forth the legal argument in "point headings" which ask questions:
Point I-Was the defendant-appellant Melvin Earl Phillips denied effective assistance of counsel by his attorney's representation that the judge would be lenient if he pled, guilty, on which he relied?
Point II-Did the trial judge commit reversible error in considering the defendant's second arrest, and plea, as contained in the supplemental investigation supplied the court, in sentencing the defendant on the first arrest charges?
The reason for the delay in sentencing appears clearly enough in the sentencing transcript, where the sentencing judge reports:
... [O]riginally, I recall this very well, that you and a co-defendant were involved, Ceolis Redding, and Mr. Redding's record was not good. Your record was completely clean.
In addition to your record being clean, you had this potential as an athlete that you were pursuing in school, and the principal at the school gave us a good report about you, and I remember when you came here for sentencing the first time, you had a stack of paper a foot high that you wanted me to look at and read, and Mr. Redding told the story that you were the instigator of the events in question, and, of course, you told the story that Mr. Redding was the instigator of the events in question. I didn't know who to believe, but I looked at the records, and I decided that you having a clean record, you were the fellow to believe. So, I sent Mr. Redding away to state prison for a very long time.
In your situation, I did something a little unusual. I postponed the sentence for a very long period of time.
[DEFENDANT]: Yes, sir.
THE COURT: The idea was to let you finish school, get your scholarship, and, hopefully, go to college, and if you did that, I was probably going to do something, or at least I was going to wrestle with the problem of maybe I wouldn't send you away to jail for a long, long time. Maybe, but I was at least going to give you the opportunity to get high school behind you and see how you made out, and if you were doing good, I would have at least considered it. Whether I would have done it is quite another question, because what you did was so obnoxious, and so heinous, and so rotten, that it deserves a very stiff punishment. It is a terrible, terrible crime that you committed.
The hopes of the judge as thus expressed were frustrated. As he tells us:

*499 Then time took care of things. You did not rise to the occasion. I want to read to you-you have the supplemental investigation, and I want to put it in the record.
You were dropped from the attendance rolls of Salem Senior High School on March 21. You were in jail in Salem because you were arrested for another rape to which you have confessed, I understand.
[DEFENDANT]: No, sir.
THE COURT: No?
[DEFENDANT]: No.
THE COURT: You had been arrested for another rape.
You were absent 40 days. I would say that 18 of those 40 days was because you were in jail, but there are 12 of them unaccounted for.
You were late 23 times. That means you were not in jail, but you were late during the 1978-79 school year.
You received one 5-day external suspension for striking a student in February. You had four D's, two C's at the end of the second marking period.
You were a member of the football team, but due to sporadic attendance and missed practices, you saw little playing time.
Now, that is the report I have. That means, sir, that you did not, and you were not so concerned even though you were pending sentence to straighten out your life, and now you tell me that the simple fact that you spent a little time in the county jail has straightened you out.
Defendant's first point is wholly without merit. It is abundantly clear from the plea transcript that the defendant understood the very real potential for a maximum sentence. The following is demonstrative:
THE COURT: You understand, sir, that I can sentence you to state prison for 51 years after you plead guilty.
[DEFENDANT]: Yes.
THE COURT: You know that.
[DEFENDANT]: Yes.
THE COURT: And you know I might do it, too. Do you know that?

[DEFENDANT]: Yes, sir.

[Emphasis supplied.]
Perhaps understandably, the issue was not raised before the sentencing judge. However, there was no motion for reconsideration. There was no petition for post-conviction relief or an effort to make a record concerning the alleged representation. *500 Absolutely the only record support which appears respecting this contention is a one-page "affidavit," not even from defendant but from his mother, which, though reciting that the affiant was sworn, contains no jurat and is undated. There is no evidence that this was before the judge below.[1] Nevertheless, we have given serious consideration to the merits of the issue and are convinced from all that is before us that the argument is frivolous.
With regard to the second point defendant argues at length from the language of State v. Green, 62 N.J. 547 (1973). In fact at one point in the argument he argues "that the `whole man' was also not considered by the sentencing judge" in the instant case. It is precisely the "whole man" theory of Green which justifies the consideration by the judge of the supplemental investigation, particularly in the circumstances of this case where sentencing was delayed in order that the judge might give defendant the benefit of an opportunity to demonstrate that the "whole man" in this case was a better man than appeared from the occurrence of these confessed heinous crimes.
There appears to be no doubt that the sentencing judge did in fact consider, as relevant to the sentence to be imposed, an arrest of defendant, subsequent to the entry of his plea here, on a separate charge. Green directs that arrests prior to a conviction *501 may (and should) be considered in sentencing. It is arguable that arrests on unrelated matters subsequent to a conviction should not be considered on the theory that relevant sentencing considerations should be "fixed" at the time of conviction. If this argument has merit-a proposition we do not here decide for reasons which will appear-it is only because fairness suggests that a guilty defendant should receive no ex post facto enhancement of his punishment.
Significantly, in the matter before us defendant did not receive an enhanced punishment because of his later arrest. He simply did not gain the benefit of an amelioration that more exemplary conduct might have produced. It is obvious to us from the record that the sentencing judge recognized from the outset the substantial penalty required by all the circumstances of the events in question. He delayed far beyond the time in which he might easily have been justified in sentencing. He hoped that interim circumstances would permit him not to "send you away to jail for a long, long time," for the "stiff punishment" this "terrible, terrible crime" deserved. This hope was completely frustrated by defendant's abysmal record during the extended time from plea to sentence, including the arrest in question.
Accordingly, we need not decide whether the rationale of Green as we read it is to be extended to accord uncircumscribed sentencing relevance to arrests after conviction. Consideration of the "whole man" has been found to be an increasingly useful tool in the difficult problems implicated in criminal sentencing. It has been expanded into other fields of the criminal process and, when appropriate has been utilized in favor of the defendant. State v. Sayko, 71 N.J. 8 (1976). There is much to be said for its fullest employment. But it is enough here to say that post-conviction arrests may indeed be considered by a sentencing judge in his determination of whether a *502 sentence otherwise wholly justified should be mitigated to accommodate defendant. This is in line with the undoubted proposition that in order properly to perform the delicate sentencing task the judge needs and must have all the information available respecting defendant. "Highly relevant-if not essential-to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. [Footnote omitted.]" Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). See also United States v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). Prior arrests and juvenile offenses are available to him "even though no convictions have ensued" even as are "drug offense[s] which [have] resulted in supervision and discharge" so long as they are not "given the weight of a criminal conviction." State v. Marzolf, 79 N.J. 167, 177 (1979).
The open-ended deferral of sentence which we encounter here should not have taken place. Sentence should have followed conviction promptly. R. 3:21-4(a). However, the deferral here was for the benefit of defendant in order to afford him the opportunity to establish subsequent mitigating circumstances when ultimately sentenced. Had he been sentenced earlier as he should have been, defendant's subsequent behavior would not have been a consideration. However, in view of the unusual circumstances of this case, we believe the judge had authority to consider such factors as defendant's suspension from school for striking a student, his unsatisfactory absentee and tardiness record and also his arrest, in deciding whether subsequent ameliorating factors had been demonstrated.
We note that nowhere does defendant challenge the accuracy of the facts revealed in the supplemental investigation, although defendant in testimony did indeed attempt to explain some of the school circumstances away.
Affirmed.
NOTES
[1] This affidavit offends the Rules. At the very best it fails of compliance with R. 2:6-1(b) which requires that the filing date of each paper included in defendant's appendix shall be stated at the head of the copy. If it is as we suspect, that this affidavit postdates the sentencing hearing, the unilateral inclusion of the affidavit in the appendix is completely improper. We observed in Middle Dep't Insp. Agency v. Home Ins. Co., 154 N.J. Super. 49, 56 (App.Div. 1977), certif. den. 76 N.J. 234 (1978) that an annexed affidavit not before the trial court is improperly before us. There we characterized such an inclusion as a "gross violation of appellate practice and rules." We have been particularly careful not to permit this procedural infirmity to interfere with our careful consideration of the merits of the appeal. We are satisfied that defendant should not be charged with this lack of professionalism and inattention to the Rules.