211 N.J. Super. 110 (1986)
510 A.2d 1210
STATE OF NEW JERSEY, PLAINTIFF
v.
THOMAS CHARLES WOOD, DEFENDANT.
STATE OF NEW JERSEY, PLAINTIFF
v.
TYRONE JOHNSON, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Burlington County.
February 10, 1986.
*111 Jorge C. Godoy for defendant Thomas Charles Wood (Timothy Hughes, Public Defender, attorney).
Ernest Bongiovanni for defendant Tyrone Johnson (Timothy Hughes, Public Defender, attorney).
Rocco Minervino for plaintiff (Stephen Raymond, Burlington County Prosecutor, attorney).
HAINES, A.J.S.C.
Thomas Charles Wood and Tyrone Johnson were indicted for theft and burglary offenses. Both applied for admission to the Burlington County pretrial intervention (PTI) program. Both were rejected because, according to the PTI Director, they had signed false affidavits, the submission of which he routinely requires in connection with PTI applications. No other reason for rejection was stated. Both applicants have appealed the rejection to this court.
The PTI affidavit signed by Wood is set forth in full as follows:
I, Thomas Charles Wood of full age, being duly sworn according to law, upon my oath do state that I have never been arrested or charged with any violation of law either as an adult or juvenile (excluding minor traffic offenses) other than the offenses which I have listed below. I make this statement with the *112 full understanding that should this be untrue, I may be charged with False Swearing under 2C:28-2 a crime of the fourth degree punishable by a fine of up to $7,500 or imprisonment for up to 18 months or both. I also understand that should this statement be untrue it will result in automatic denial of my Pretrial Intervention application or automatic termination from the Pretrial Intervention Program if I am already enrolled.
The Director's response was contained in the following letter (quoted completely):
 Thomas Charles Wood
 111 Pavillion Avenue
 Riverside, NJ 08075
 PTI #85-0008
Dear Mr. Wood:
On January 3, 1985, you appeared in this office and made application for Pretrial Intervention. At that time, you were handed various documents, including a Prior Record Affidavit.
You indicated on your prior record history that you have had no other arrests or charges brought against you, either as an adult or juvenile. You then signed that Affidavit and had it notarized.
Our records reflect that you were arrested in October of 1984 for issuing five bad checks, and that your court date is January 31, 1985.
It is stated on the Record Affidavit that, should you make a false statement, that you are automatically rejected by this Program. Furthermore, I am considering having the Prosecutor review this matter, to see if you should be criminally charged with False Swearing under 2C:28-2.
Taking the above into consideration, I am closing our interest in this matter.
An identical affidavit was signed by Johnson. His rejection letter was similar to Wood's, except that it referred to a conviction for shoplifting.
Wood supported his appeal with an affidavit, which stated that, prior to October 1984, he had been arrested for a motor vehicle offense and sentenced to jail for 17 days but understood that "I had to tell about offenses other than motor vehicles for which I had been arrested, that is, given bail or held in custody." As to the bad checks, he said that "[t]he court hearing on the bad check offenses occurred after I made my affidavit and resulted in my paying restitution of $80...." He also said that the complainant in the bad check case wished to dismiss the complaint.
*113 Johnson also filed an affidavit in support of his appeal. He said that he understood, when he signed his application affidavit, that he had "never been arrested and therefore had no prior record." He advised that he had been stopped by a security guard in a department store and shortly thereafter was sent to Hawaii as part of his military service. His mother filed a companion affidavit in which she said that while her son was in Hawaii, she received a summons requiring him to be in municipal court, that she called the court and was advised to pay his fine, which she did.
Wood and Johnson argue that the use of the affidavits they were required to sign as part of their applications to the PTI program was improper and that the rejection of their applications on the basis of those affidavits was therefore equally so.
Normally, the record in a PTI appeal consists only of copies of documents contained in the Director's files. State v. White, 145 N.J. Super. 257 (Law Div. 1976). In the present case, however, those documents would not reflect all of the facts necessary to address the applicant's contentions. They did not know how their affidavits were to be used until after their applications had been rejected. Under these circumstances, the filing of supplemental affidavits is permissible. State v. Masucci, 156 N.J. Super. 272, 278 (Law Div. 1978). In any event, the information in the appellate affidavits may be treated as merely illustrative; its truthfulness is not in issue.
The application affidavits should not be used as part of the PTI application process. They are misleading and entrapping. They may offer a convenient way for the Director to obtain information about criminal records, but it is obvious that he obtains such records in any event from other sources. Furthermore, he can request information about criminal records without requiring such information to be in affidavit form. The bulk of the information which he obtains from a PTI applicant is not given under oath. The necessity for sworn proof as to the criminal record only is not clear. Furthermore, the threat *114 of prosecution for false swearing, contained in the Director's letter of rejection and in the affidavit itself, if carried out, would violate the confidentiality rules of the PTI program discussed below. It must be concluded, therefore, that the rejection of the applications in these cases, being based upon the use of improper affidavits, constituted an abuse of discretion by the Director and the Prosecutor (who supported the Director's position without filing any separate reasons) requiring remands.

A. The Affidavit Itself.

The affidavit required each affiant to assert that he had "never been arrested or charged with any violation of law either as an adult or juvenile (excluding minor traffic offenses) other than the offenses which I have listed below." The blanks provided at the end of the affidavit are headed with the words "Criminal Record History" and require the applicant to provide the "date of arrest," "town of arrest," "charge," and "disposition." The Director was entitled to know the criminal record of the applicants, if any, since that is one of the criteria for admission to a PTI program. The record to be considered, however, as discussed more fully below, is the record of convictions, not arrests or charges. N.J.S.A. 2C:43-12(a)(9); Guideline 3(e). Aside from statute and guideline, the request runs counter to the rules by which our society lives. All of us, no matter how innocent, can be charged and arrested, circumstances which not only do not constitute proof of guilt, but also are inadmissible in a criminal prosecution to affect credibility. State v. Nagy, 27 N.J. Super. 1, 5 (App.Div. 1953). For these reasons, it is improper to require disclosure of charges and arrests as a condition to PTI admission.
In addition, the affidavit is confusing. It uses the disjunctive "arrested or charged." The criminal record history leaves spaces for arrests and charges. There is also a space for "disposition." The terminology raises questions not easily answered by the untutored. Can you be arrested without being *115 charged? Can you be charged without being arrested? What is a charge? What is a disposition; is it limited to a conviction or an acquittal? What is a "minor" traffic offense?
The applicants' affidavits in support of their appeals point up the confusion. Wood equated "arrest" with bail or custody. His receipt of a summons did not indicate to him that he had been arrested. He must have been convicted since he was obliged to pay restitution, but he did not understand the connection. Johnson did not believe that he had been arrested when he was stopped by a guard nor did he think he had been convicted when his mother paid the fine. It seems that he never appeared in response to his summons and therefore may not have been properly convicted, if he was.[1]

B. The Purpose of the Affidavit.

The Director's request of the applicant for a criminal history, couched in proper terms and limited to criminal convictions, is permissible, but the affidavit is an unnecessary form to employ. What, therefore, is its purpose? Arguably, it insures truthful statements. If that is its purpose, why is not all information obtained under oath? The criminal history is the only information required to be in affidavit form. The affidavit has the appearance of entrapment; if correct or inadequate information is provided, it forms not only a basis for rejecting the application, but also offers the prospect of a false swearing prosecution.[2]
PTI policy, expressed in Guideline 5, states:

*116 Effective operation of pretrial intervention programs requires that a relationship of confidence and trust be initiated and maintained between participating defendants and staff.
A form affidavit in which seven of the eleven printed lines promise a false swearing charge, and/or application denial or termination of admission (the alternative being unclear), does not fit this policy.
The Prosecutor argues that the "whole man" concept, developed in connection with issues involving the sentencing of convicted criminals, applies here, permitting a consideration of arrests and juvenile records. He cites State v. Pickett, 186 N.J. Super. 599 (Law Div. 1982) in which the court said:
It is the Director's responsibility to carefully weigh all of the objective data available in connection with an applicant so as to make the necessary subjective judgment about his character and potential for rehabilitation which undergirds any decision to accept or reject him. This analysis is much like that which is made in connection with sentencing, where the so-called "whole-man" is evaluated by the Court in order to arrive at an appropriate disposition." 186 N.J. Super. at 604.
As in the case of sentencing, the difficult judgmental function which is required of the director in attempting to assess human nature in order to evaluate a potential for rehabilitation can only be aided by the free flow of information...." Like the sentencing Judge, the Director is `not required to wear blinders' in assessing the circumstances of the offense involved. [at 608]
It is true that information concerning arrests and juvenile convictions may be presented to a New Jersey sentencing judge in a presentence report. State v. Green, 62 N.J. 547 (1973). The reasons for permitting disclosure of this highly prejudicial information are said to be:
(1) ... it may lead to factual material which the defendant may not contest and which may bear upon the character of the sentence.
(2) ... the sentencing judge might find it significant that a defendant who experienced an unwarranted arrest was not deterred by that fact from committing a crime thereafter. [Id. at 571]
*117 "The important limitation, of course, is that the sentencing judge shall not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt." Ibid. "Respectable authority" supports a contrary conclusion, i.e., that arrests without convictions may not be considered. Id. at 568-570.
Pickett did not address the present issue and in any event, a Law Division decision is not binding on this court. Its concept makes obvious sense, but there are important differences between a presentence report and a PTI application. The former is presented to a judge who is trained to ignore irrelevant, immaterial, and prejudicial information when making a decision. The latter is presented to a PTI Director not so trained and to a Prosecutor whose role may be adversarial. At a sentencing, the defendant must be represented by counsel whose arguments concerning the presentence report will be considered. Like representation during the decision-reaching stage of the PTI process is not guaranteed. Sentencing is a formal procedure involving a convicted defendant; PTI uses an informal procedure involving a defendant who is presumed to be innocent. The primary goal of PTI is rehabilitation, N.J.S.A. 2C:43-12; when addressing an application, the Director and Prosecutor must, therefore, always consider the individual. State v. Sutton, 80 N.J. 110, 119 (1979). Sentencing, in the time of Green, focused on rehabilitation. That emphasis has disappeared; the criminal code is offense-oriented; the individual is much less important. State v. Hodge, 95 N.J. 369, 375 (1984). These are significant differences. The PTI procedure is too fragile, the standards too general, to permit obviously prejudicial arrest and juvenile conviction records to be considered when judging an application. The PTI statute, rules and guidelines do not refer to them. I read their omission as intentional.

C. Convictions, Charges and Arrests.

Neither charges nor arrests are convictions. The PTI statutes and rules permit consideration only of the latter.
*118 N.J.S.A. 2C:43-12(e)(9) states that the criteria for admission to a PTI program include:
The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others....
R. 3:28, Guideline 3(e) provides in part:
Prior Record of Convictions. While the pretrial intervention program is not limited to "first offenders," defendants who have been previously convicted of a criminal offense should ordinarily be excluded. [Emphasis supplied]
A comment to Guideline 3(e) says:
Guideline 3(e) makes it clear that a prior criminal record may be indicative of a behavioral pattern not conductive to short-term rehabilitation. Therefore, pretrial intervention should ordinarily be limited to persons who have not previously been convicted of a crime and hence a rebuttable presumption against enrollment is created by the fact of a prior conviction. [Emphasis supplied]
The Director and the Prosecutor, therefore, may consider criminal convictions but nothing short of convictions. Consequently, arrests and charges may not be considered as "part of a continuing pattern of antisocial behavior," N.J.S.A. 2C:12(e)(8), or as "personal problems and character traits," N.J.S.A. 2C:43-12(e)(5). For the same reason, convictions of traffic offenses which are not crimes may not be considered. Convictions of juvenile offenses are not criminal convictions; they are also outside the pale. N.J.S.A. 2C:4-11.

D. Confidentiality and the False Swearing Charge.

PTI records are not open for public inspection. R. 1:38, entitled "Confidentiality of Court Records," provides that PTI records are not "public" records and are not available for public inspection. Subparagraph (f) of that rule provides that the following are exceptions to the general rule that court records are public records:
Records of programs approved for operation under R. 3:28 and reports made for a court or prosecuting attorney pertaining to persons enrolled in or under investigation for enrollment in such programs.
R. 3:28(c)(4) provides:
During the conduct of hearings subsequent to an order returning the defendant to prosecution in the ordinary course, no program records, investigative reports, reports made for a court or prosecuting attorney, or statements made *119 by the defendant to program staff shall be admissible in evidence against such defendant. No such hearing with respect to such defendant shall be conducted by the designated judge who issued the order returning the defendant to prosecution in the ordinary course.
In State v. Leonardis, 71 N.J. 85 (1976), the Court said:
... To further the rehabilitative function of PTI, the addition of paragraph (c)(4) made admissions and statements by a defendant during his enrollment and participation in a program, inadmissible at any subsequent trial. This provision also made the contents of reports compiled during a defendant's enrollment inadmissible at trial. [at 103-104, n. 10]
R. 3:28(c)(5) provides:
No statement or other disclosure, regarding the charge or charges against him, made or disclosed by a participant in pretrial intervention to a person designated to provide supervisory treatment shall be disclosed by such person at any time, to the prosecutor, nor shall any such statement or disclosure be admitted as evidence in any civil or criminal proceeding against the participant, provided that the program director shall not be prevented from informing the prosecutor, or the court, upon request or otherwise, whether the participant is satisfactorily responding to supervisory treatment.
N.J.S.A. 2C:43-13(f) provides:
Evidence. No statement or other disclosure by a participant undergoing supervisory treatment made or disclosed to the person designated to provide such supervisory treatment shall be disclosed, at any time, to the prosecutor in connection with the charge or charges against the participant, nor shall any such statement or disclosure be admitted as evidence in any civil or criminal proceeding against the participant. Nothing provided herein, however, shall prevent the person providing supervisory treatment from informing the prosecutor, or the court, upon request or otherwise as to whether or not the participant is satisfactorily responding to supervisory treatment.
The language of the rule, the statute and of the Supreme Court in Leonardis make it entirely clear that the information obtained from an applicant by the PTI Director whether contained in the application, the accompanying affidavit or otherwise, is completely confidential.
The rule was emphasized in State v. Forbes, 153 N.J. Super. 336 (Law Div. 1977):
While the requirement of confidentiality set forth in R. 3:28(c)(4) is primarily concerned with preventing the applicants' statements and admissions from being used against them in subsequent proceedings, the confidentiality requirement of R. 1:38 is in no way limited to that purpose. Guideline 5 emphasizes that a trust relationship based upon confidentiality is essential in order to effectuate meaningful rehabilitation [at 340, n. 1]
*120 Also, in State In Interest of J.P.B., 143 N.J. Super. 96 (App.Div. 1976), a juvenile's admission of criminal activity at a group session, which took place at the institution to which he had been committed, was held to be inadmissible in evidence against him. The group leader had promised confidentiality and was found to be an agent of the State. The court said:
When, as here, the State exacts information under a promise or assurance of confidentiality, it cannot, consistent with due process and fundamental fairness, violate that confidentiality and defeat the expectations raised by its promise by using the information in a criminal trial as incriminating evidence against the one who offered it. [at 106]
But, see Judge Pressler's comment to R. 1:38, Guideline 5: "Of course, defendants who give false information on PTI applications may subject themselves to charges of perjury or false swearing in instances where supporting affidavits may be required by the program director. Affidavits relating to the facts and circumstances of the underlying offense shall not be required."
It is the conclusion of this court that the information obtained in PTI applications, including affidavits, if any are permissible, may not be used to support a charge of false swearing.

E. Conclusions.

The use of affidavits in these cases was improper for all of the reasons stated. The rejections of the applicants, based solely upon the information contained in the affidavits, was a patent abuse of discretion requiring a remand. Both applications must be given further consideration without regard to the contents of the affidavits supplied by the applicant.
NOTES
[1] In the course of oral argument, counsel stated that PTI applicants are not allowed to have the advice of counsel while filling out the affidavit. This does not appear in the record; if it is correct, the practice raises obvious due process questions, especially when, as here, the applicants are represented. Gagnon v. Scarpelli, 411 U.S. 778, 790-791, 93 S.Ct. 1756, 1763-1764, 36 L.Ed.2d 656 (1973).
[2] See N.J.S.A. 2C:2-12(a)(2). This statute was considered in State v. Rockholt, 96 N.J. 570 (1984), in which the Court said it:

... changed the definition of entrapment to require both that the police conduct created a substantial risk that the crime would be committed by people who were not predisposed to commit it and that it caused the particular defendant to commit the crime. [at 577]