291 N.J. Super. 375 (1996)
677 A.2d 767
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KEVIN FITZSIMMONS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 24, 1995.
Decided December 26, 1995.
Remanded March 12, 1996.
Resubmitted March 14, 1996.
Decided June 12, 1996.
*377 Brian J. Neary, attorney for appellant (Mr. Neary, of counsel and on the brief; Yung-Mi Lee, on the brief).
Charles R. Buckley, Acting Bergen County Prosecutor, attorney for respondent (John J. Scaliti & Stuart Minkowitz, Special Deputy Attorneys General, of counsel and on the letter brief).
Before Judges PRESSLER, KEEFE and RODRIGUEZ.
Remanded by Supreme Court March 12, 1996.
The opinion of the court was delivered by KEEFE, J.A.D.
*378 This matter has been remanded by the Supreme Court for us "to consider the point raised in [the State's] petition that the judgment below conflicts with [the] Court's decision in State v. Nwobu, 139 N.J. 236, 652 A.2d 1209 (1995)."
Nwobu was cited in the State's appellate brief. We, therefore, were aware of the decision and the elements set forth therein which are prerequisites for concluding that the prosecutor's denial of defendant's application for admission to PTI resulted from a "clear error of judgment." Id. at 247, 652 A.2d 1209 (quoting State v. Bender, 80 N.J. 84, 93, 402 A.2d 217 (1979)). We regret that we did not couch our opinion in the terms or context of Nwobu but do so now.
We acknowledge that one of the drug offenses charged against defendant was a second degree crime, and that "compelling reasons" must be established to overcome the presumption against PTI. Nwobu, supra, 139 N.J. at 252, 652 A.2d 1209. Nonetheless, unless complete deference must be given to the prosecutor when second degree crimes are involved to the point that the presumption becomes an irrebuttable one, we are satisfied that, in this case and with respect to this defendant, the prosecutorial decision was so "clearly unreasonable as to shock the judicial conscience," and that "the prosecutor's decision could not have been reasonably made upon weighing the relevant factors." Ibid. (quoting State v. Roth, 95 N.J. 334, 365, 471 A.2d 370 (1984)).
The crimes charged against defendant were committed by him when he was just two months past his eighteenth birthday, and all within a three week period. Defendant had no juvenile record. While not diminishing the seriousness of the offenses, defendant's conduct, at best, demonstrates a "momentary loss of moral resolve." Id. at 254, 652 A.2d 1209. All of the offenses were motivated by defendant's severe drug addiction which began when he was twelve years old. The State was given the opportunity to have defendant examined to determine the bona fides of his *379 assertion of drug dependency. However, it eschewed the opportunity at the first hearing in this matter, preferring instead to accept the assertion, and argue against PTI on the ground that the length of PTI supervision was not sufficient. Notwithstanding the position the State took at the first hearing, at the second hearing after our remand, it chose to question defendant's claim that he required treatment rather than incarceration and that he was successfully engaged in a drug rehabilitation program, without any evidential basis for doing so. This inexplicable change of position without any evidential support demonstrates arbitrariness.
The first Law Division judge who reviewed this case described defendant's rehabilitative efforts as "Herculean." This court, in its first opinion, observed that defendant's efforts in that regard were both "impressive" and "apparently successful." Reports of defendant's progress in the various drug programs in which he was involved were submitted for review after our initial remand and demonstrated continuing success and resolve on defendant's part. Aside from his progress in drug rehabilitation, defendant was also doing quite well academically at the university he was attending.
The burglary and theft offenses, which were the subject of the accusation, were offenses committed against defendant's neighbors while they were not at home. Defendant was willing to make restitution. The victims of the offenses have not expressed a desire to see defendant incarcerated. See N.J.S.A. 2C:43-e(4). Indeed, at the first hearing of this matter, the prosecutor admitted that the victims were not asked whether they wanted to see defendant incarcerated. Yet, one of the arguments advanced by the State was that defendant would be returning home from college in the summer months, and the victims had "a right to feel secure in their homes."
The drug offenses were committed during the same three week period. The six drug offenses stemmed from two separate sales of drugs to an undercover police officer. The undercover officer spoke directly to defendant to arrange both purchases. Defendant *380 arranged to meet the undercover officer at a Burger King for one of the sales. The Burger King happened to be within 1000 feet of school property. In the other sale, a friend of the defendant, who was under the age of eighteen, transferred the drugs to the officer in return for money while defendant sat in his car. Defendant apparently gave some of the proceeds of the transaction to his friend; hence, the basis for the second degree offense charging defendant with employing a juvenile in a drug distribution scheme. Every indication in this record is that the money obtained from the drug transactions was used to fuel defendant's drug dependency. Unlike Nwobu, there is no evidence that defendant was involved in an organized, ongoing money making enterprise for profit.
The State relies on the second degree drug offense in support of its claim that the seriousness of the charge establishes the presumption against PTI. However, we note that it took the State thirteen months to have the indictment returned containing the second degree offense; one month after the first Law Division judge overruled the prosecutor's decision to deny defendant's admission to PTI. Moreover, during that initial hearing, although the Law Division judge was alerted to the fact that drug offenses against defendant were also pending, the prosecutor did not then argue that the nature or seriousness of any of those offenses would establish a presumption against admission. Indeed, the Bergen County Narcotic Task Force report concerning the matter states that defendant was arrested on May 5, 1992, and charged with "two (2) counts of narcotic distribution N.J.S.A. 2C:35-5a(1)." Neither the second degree offense nor the school zone offense were initially charged.
After the second Law Division judge to hear this matter reconsidered his earlier decision and upheld the prosecutor's denial of admission to PTI, defendant pled guilty to one count of third degree distribution of cocaine, one count of third degree distribution of cocaine within 1000 feet of a school, and two counts of third degree burglary. In exchange for his plea, the State *381 agreed to recommend that defendant receive an aggregate five year probationary term, with a three month in-house drug treatment program, and dismiss the remaining counts of the indictment and accusation. Defendant was sentenced accordingly.
Ordinarily, we would not look to a plea agreement made after the fact of PTI denial to buttress our conclusion that the prosecutor committed a clear error of judgment. However, the State's brief cites to the probationary term of the plea bargain to denounce as "rhetoric" defendant's appellate argument that the prosecutor "`thwarted his attempt at rehabilitation by denying him PTI.'" The State also argues in its brief that the probation ordered through the plea agreement will enhance "the prospects that [defendant] will lead a crime free life," not because of the length of the probationary term, but because "the specter of prison should he violate probation will undoubtedly serve as a strong deterrent to defendant."
In reality, the plea agreement accomplished little more than giving a criminal record to this young defendant who engaged in a brief period of aberrant criminal behavior, but has demonstrated success in college and is well on his way to meaningful rehabilitation. The agreement also demonstrates the hollowness of the State's reliance on the second degree offense as a reason to deny admission to PTI. We recognize the admonition in Nwobu, supra, 139 N.J. at 252, 652 A.2d 1209, against weighing the evidence in determining the strength of the State's case. However, we cannot ignore reality, and the import of the State's conduct. The State demonstrated its own views concerning the strength and seriousness of the second degree charge when it, of its own volition, elected not to pursue it. Obviously, and by the State's own admission, the probation was ordered because of defendant's clear rehabilitative success. While a violation of his current probation will expose defendant to a sentence for the crimes to which he has pled guilty, that sentence will be only for third degree offenses. However, if he violated the terms of the supervisory treatment imposed under PTI, all of the counts of the *382 accusation and indictment, including the second degree offense, could have been reinstated. N.J.S.A. 2C:43-13e. Thus, we fail to see how the criminal sentence imposed carries with it a greater deterrent effect. Instead, the State's insistence that defendant be prosecuted criminally violates the essential purposes of PTI: "to avoid ordinary prosecution by [affording] early rehabilitative services, when such services can reasonably be expected to deter future criminal behavior by the defendant, and when there is an apparent causal connection between the offense charged and the rehabilitative need, without which cause both the alleged offense and the need to prosecute might not have occurred[,]" and "[t]o provide an alternative to prosecution for defendants who might be harmed by the imposition of criminal sanctions as presently administered, when such an alternative can be expected to serve as sufficient sanction to deter criminal conduct." R. 3:28, Guideline 1(a),(b).
In conclusion, we are satisfied that our prior opinion in this case is in full accord with the principles announced in Nwobu.