814 A.2d 1051

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JAMES T. BROOKS, DEFENDANT–APPELLANT.

Argued September 24, 2002—Decided November 25, 2002.

216

*Brian L. Zavin,* Assistant Deputy Public Defender, argued the cause for appellant (*Peter A. Garcia,* Acting Public Defender, attorney).

*Steven J. Kaflowitz,* Assistant Prosecutor, argued the cause for respondent (*Thomas V. Manahan,* Union County Prosecutor, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

The issue in this case is whether Union County's prosecutor abused his discretion by denying defendant entry into that county's pretrial intervention (PTI) program based in part on defendant's juvenile and adult arrest records. We affirm the judgment of the Appellate Division upholding the prosecutor's determination. We emphasize, however, that courts, prosecutors, and PTI program directors may draw only limited inferences from juvenile or adult criminal histories that contain dismissed offenses. We further observe that some juvenile infractions may be so minor or distant in time that they provide no reasonable basis to support a prosecutor's rejection of PTI in a given case.

## I.

These are the pertinent facts. On September 23, 1998, defendant James T. Brooks, a resident of Maryland and self-employed bail bondsman and private investigator, was driving his automobile on Route 78 in Berkeley Heights. While on patrol, a police officer

observed defendant's car traveling approximately ten miles per hour above the posted speed limit. The officer followed defendant for three to four miles before directing him to pull over. After approaching the vehicle the officer found an opened, half-full can of beer on the interior console. The officer asked defendant to exit the car. Defendant informed the officer that he had another can of beer in the back seat. At that juncture, another officer arrived to assist the first officer.

The officers searched defendant's vehicle and found a .380 9mm handgun under the floor mat in the back seat. The gun was loaded with a five-round clip. The officers also smelled marijuana and observed a burnt marijuana cigar in the ashtray. Subsequent tests revealed that the weight of the marijuana was .287 grams. According to court records, defendant stated that he had smoked the marijuana approximately three weeks earlier and had left its residue in the car. He asserted that he had not smoked marijuana since that time and acknowledged that he "should have known better." In respect of the gun, defendant explained that he had purchased it because of his job and that he rarely carried it. Defendant produced an approved gun application and a sales receipt. Defendant asserted that under Maryland law those documents gave him the right to purchase and transport the weapon. (Defendant later admitted that he had not stored the gun properly for transport and that he did not have a permit to carry it outside his home.)

The police arrested defendant for unlawful possession of a handgun, in violation of *N.J.S.A.* 2C:39–5b, and for possession of a controlled dangerous substance, in violation of *N.J.S.A.* 2C:35–10a(4). They also issued him a summons for speeding, in violation of *N.J.S.A.* 39:4–98, and for driving with an open container of alcohol, in violation of *N.J.S.A.* 39:4–51A. We infer that defendant was not legally intoxicated when arrested in view of the absence of an intoxication charge.

Defendant applied for admission into Union County's PTI program. In a letter dated January 19, 1999, the PTI program

director informed defendant that his application had been denied, explaining, in part:

> YOUR OFFENSES, POSSESSION OF A WEAPON AND POSSESSION OF MARIJUANA, HAD THE POTENTIAL FOR VIOLENCE, WHICH CONSTITUTES GROUNDS FOR REJECTION UNDER PTI GUIDELINES. BERKELEY HEIGHTS POLICE FOUND A LOADED ACCESSIBLE WEAPON (9MM GUN), IN YOUR VEHICLE AFTER EXECUTING A ROUTINE TRAFFIC STOP. YOU WERE ALSO UNDER THE INFLUENCE OF ALCOHOL. AN OPEN BEER CAN AS WELL AS MARIJUANA WERE FOUND IN THE VEHICLE. ALTHOUGH THIS GUN WAS LEGALLY PURCHASED IT WAS NOT PROPERLY STORED FOR TRANSPORT IN THAT IT WAS NOT UNLOADED AND PLACED IN A CARRYING CASE. THIS OFFENSE FAR OUTWEIGHS THE POSITIVE REHABILITATIVE FACTORS WHICH MIGHT BE PRESENT IN YOUR CASE. ACCEPTANCE INTO THE PTI PROGRAM WOULD DEPRECATE THE SERIOUS NATURE OF THE OFFENSE.
>
> ADDITIONALLY, YOU HAVE NOT DEMONSTRATED SUFFICIENT EFFORT TO EFFECT THE NECESSARY BEHAVIORAL CHANGE AS INDICATED BY YOUR CONTINUAL INVOLVEMENT WITH THE CRIMINAL JUSTICE SYSTEM. ACCORDING TO CRIMINAL RECORDS YOU HAVE SERVED TWO JUVENILE PROBATION TERMS WITH THE UNION COUNTY PROBATION DEPARTMENT. AS A JUVENILE OVER EIGHT COMPLAINTS WERE FILED AGAINST YOU IN SCOTCH PLAINS, FANWOOD, NORTH PLAINFIELD AND WATCHUNG. THE CHARGES INCLUDE MOTOR VEHICLE THEFT, BURGLARY, TRESPASSING, RECEIVING STOLEN PROPERTY AND TRUANCY. AFTER BEING DISCHARGED FROM PROBATION IN 1989 YOU HAD TWO ARRESTS IN 1992. IN NORTH PLAINFIELD YOU WERE ARRESTED FOR SHOPLIFTING AND ASSAULT, AND IN PLAINFIELD YOU WERE ARRESTED FOR POSSESSION OF A WEAPON AND OBSTRUCTING POLICE. ALTHOUGH BOTH OF THESE CHARGES WERE DISMISSED THEY DISPLAY A PATTERN OF DISREGARD FOR THE CRIMINAL JUSTICE SYSTEM, AND INDICATE THAT PTI COUNSELING WOULD BE INEFFECTIVE IN DETERRING YOU FROM FURTHER CRIMINAL ACTIVITY.
>
> DESPITE YOUR GAINFUL SELF–EMPLOYMENT, COMPLIANCE WITH PTI CONDITIONS, AND NUMEROUS LETTERS PRAISING YOUR PROFESSIONALISM, SCHOLASTIC ACHIEVEMENT AND CHARACTER, THE SERIOUS NATURE OF THE CHARGES COUPLED WITH YOUR CONTINUAL INVOLVEMENT WITH THE CRIMINAL JUSTICE SYSTEM BAR YOU FROM PTI PARTICIPATION. IF SERVING TWO TERMS OF JUVENILE PROBATION AND NUMEROUS ENCOUNTERS WITH THE POLICE DO NOT DETER YOU FROM CRIMINAL ACTIVITY, IT IS DOUBTFUL THAT PTI WILL. THE ABOVE FACTORS WARRANT YOUR REJECTION FROM THE PTI PROGRAM.

The prosecutor concurred with the director's determination. Defendant moved before the trial court to compel his admission into the PTI program. The court denied that motion. It emphasized that as a bondsman defendant likely had posted numerous bonds for persons carrying handguns without permits and thus "more than anyone else ... [defendant] knew [that his gun offense] was wrong, and he disregarded that." The court also cited defendant's prior contact with the criminal justice system both as a juvenile and as an adult.

As reflected in the director's letter, defendant's juvenile history includes five arrests between 1987 and 1988 on assorted charges (*e.g.*, receiving stolen property, truancy, burglary, and theft), which prosecutors ultimately had dismissed. Two additional arrests, however, had led to two separate probationary terms in 1987. The first probationary term stemmed from charges of eluding, possession of a stolen vehicle, and motor vehicle theft. Similarly, defendant received a second term of probation for trespass. Defendant's adult record contains two separate arrests in 1992 on offenses that also had been dismissed. One of the dismissed charges involved possession of a weapon.

Defendant entered into a plea agreement under which the prosecutor dropped the drug possession and open-container charges in exchange for defendant's plea of guilty on the handgun count. The speeding summons was remanded to the Berkeley Heights municipal court for disposition. The trial court accepted the plea arrangement and sentenced defendant to two years probation, imposed a $500 fine, and assessed the usual fees and costs. The court also required defendant to remain gainfully employed and to refrain from possessing, using, and distributing drugs.

Defendant appealed. (Under the plea agreement, defendant did not waive his right to appeal the denial of PTI.) In an unreported opinion, the Appellate Division upheld the prosecutor's rejection of defendant's application, finding no "patent or gross abuse of discretion by the prosecutor or consideration of irrelevant factors."

We granted defendant's petition for certification. 171 *N.J.* 337, 793 *A.*2d 715 (2002).

## II.

█ The purposes, goals, and considerations relevant to PTI are found at *N.J.S.A.* 2C:43–12 and at *Rule* 3:28 and its accompanying guidelines (Guidelines). One purpose is to augment the options of prosecutors in disposing of criminal matters. *State v. Nwobu,* 139 *N.J.* 236, 246, 652 *A.*2d 1209 (1995). Another, as explained in the statute, is to provide applicants "with opportunities to avoid ordinary prosecution by receiving early rehabilitative services or supervision, when such services or supervision can reasonably be expected to deter future criminal behavior by an applicant[.]" *N.J.S.A.* 2C:43–12a(1). Stated differently, PTI's aim is to provide prosecutors an alternate method to dispose of charges levied against qualified applicants consistent with the interest of the applicant and the overall interests of society and the criminal justice system. *State v. DeMarco,* 107 *N.J.* 562, 567, 527 *A.*2d 417 (1987).

█ Procedurally, a defendant seeking admission into a PTI program must apply to the county's criminal division manager or program director "at the earliest possible opportunity, including before indictment, but in any event no later than twenty-eight days after indictment." *R.* 3:28(h). Admission is subject to the director's recommendation and prosecutor's consent. *Nwobu, supra,* 139 *N.J.* at 246, 652 *A.*2d 1209. The director and prosecutor evaluate the merits of an application according to the Guidelines and statutory factors enumerated under *N.J.S.A.* 2C:43–12e. In that respect the statute provides, in part:

Prosecutors and program directors shall consider in formulating their recommendation of an applicant's participation in a supervisory treatment program, *among others,* the following criteria:

(1) The nature of the offense;

(2) The facts of the case;

(3) The motivation and age of the defendant;

(4) The desire of the complainant or victim to forego prosecution;

(5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;

(6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment;

(7) The needs and interests of the victim and society;

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

(9) The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others;

(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) The history of the use of physical violence toward others;

(13) Any involvement of the applicant with organized crime;

(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and

(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

[*N.J.S.A.* 2C:43–12e (emphasis added).]

The Guidelines contained in *Rule* 3:28 embody the essential elements of the enumerated statutory factors.

Although there are no explicit *per se* rules excluding offenders from PTI eligibility, the statute provides that "supervisory treatment should ordinarily be limited to persons who have not previously been convicted of any criminal offense under the laws of New Jersey, or under any criminal law of the United States[.]" *N.J.S.A.* 2C:43–12a. This Court has warned that conditioning a defendant's admission to PTI solely on the nature of his or her offense "may be both arbitrary and illogical" and that "[g]reater

emphasis should be placed on the offender than on the offense." *State v. Leonardis,* 71 *N.J.* 85, 102, 363 *A.*2d 321 (1976). Courts also have noted that broader societal interests might justify denying a defendant's PTI application "even though a defendant has led an exemplary life except for the conduct which forms the basis of the pending criminal charges." *State v. Seyler,* 323 *N.J.Super.* 360, 370, 733 *A.*2d 497 (App.Div.1999), *aff'd,* 163 *N.J.* 69, 747 *A.*2d 280 (2000).

Our case law is well settled that the judiciary accords enhanced deference to a prosecutor's decision in respect of a PTI application. *Nwobu, supra,* 139 *N.J.* at 246, 652 *A.*2d 1209. To succeed in challenging the denial of such application, a defendant must prove "clearly and convincingly" that a prosecutor's decision was a "patent and gross abuse of his discretion." *State v. Leonardis,* 73 *N.J.* 360, 382, 375 *A.*2d 607 (1977) (*Leonardis II*). More specifically, a defendant must show that the prosecutor's decision "(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." *State v. Bender,* 80 *N.J.* 84, 93, 402 *A.*2d 217 (1979). In addition to that showing, a successful defendant also must demonstrate "that the prosecutorial error complained of will clearly subvert the goals underlying [PTI]." *Ibid.*

As a practical matter, our standard of review translates into a high burden for defendants. Accordingly, "[j]udicial review is 'available to check only the most egregious examples of injustice and unfairness.'" *DeMarco, supra,* 107 *N.J.* at 566, 527 *A.*2d 417 (quoting *Leonardis II, supra,* 73 *N.J.* at 384, 375 *A.*2d 607). Lastly, although a prosecutor's discretion in this area is not unbridled, see *State v. Baynes,* 148 *N.J.* 434, 451, 690 *A.*2d 594 (1997) (invalidating prosecutor's *per se* rule denying PTI to any defendant committing school-zone drug offense), "a prosecutor's decision to reject a PTI applicant 'will rarely be overturned.'" *State v. Wallace,* 146 *N.J.* 576, 585, 684 *A.*2d 1355 (1996) (quoting *Leonardis II, supra,* 73 *N.J.* at 380, 375 *A.*2d 607).

### III.

### A.

Defendant mounts two challenges to the prosecutor's rejection of his PTI application. First, he contends that the prosecutor improperly considered both his juvenile record and his adult arrests that had resulted in dismissed charges. He argues that juvenile adjudications are not considered the equivalent of convictions and, further, that neither the statute nor Guidelines expressly permit a prosecutor to consider juvenile offenses or adult charges that are later dismissed. Defendant submits that even if prosecutors may consider such information, they should not be permitted to infer guilt from dismissed charges and should accord those items less weight than they would adult convictions.

Second, defendant asserts that absent his juvenile record and the dismissed adult charges, and in view of the other circumstances in this case, the prosecutor's action constituted an abuse of discretion. Defendant claims that the prosecutor misconstrued the facts of this case and gave insufficient weight to his suitability for PTI. He argues that his gun was not accessible, that he was not speeding at a "high rate" on Route 78, that the evidence presented does not support a conclusion that he was intoxicated, and that the amount of marijuana found in his possession was negligible. Defendant characterizes his record as "virtually [ ] unblemished" and emphasizes that he accepts responsibility for his actions.

In evaluating defendant's first contention we turn initially to the statute's literal text. In so doing, we note that there is no explicit provision governing an applicant's juvenile criminal history. As noted, however, the introductory sentence of *N.J.S.A.* 2C:43–12e provides that prosecutors and program directors shall consider the enumerated criteria, "among others," in formulating their recommendations. (Guideline 3 of *Rule* 3:28 also explains that the enumerated factors shall be considered "together with other relevant circumstances.") Plainly, that lan-

guage does not evince the Legislature's intent to limit a prosecutor's discretion to the enumerated factors alone. We cannot, therefore, supplement the statute by precluding a prosecutor's consideration of juvenile adjudications or juvenile and adult arrest records when no such limitation is found in the statute's text. See *Township of Pennsauken v. Schad,* 160 *N.J.* 156, 170, 733 *A.*2d 1159 (1999) (providing rules of statutory construction); Norman J. Singer, 3 *Sutherland Statutory Construction* § 59:8 at 173 (6th ed. 2001) (discussing statutory construction of penal statutes).

Moreover, the statute impliedly invites a prosecutor to consider a defendant's juvenile history. *N.J.S.A.* 2C:43–12e(9) permits a prosecutor to consider "[t]he applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others[.]" We are satisfied that that provision is broad enough on its face to include a defendant's juvenile record. Similarly, *N.J.S.A.* 2C:43–12e(8) authorizes prosecutors to consider whether "the applicant's crime constitutes part of a continuing pattern of *anti-social behavior.*" (Emphasis added). That reference to anti-social behavior suggests that in this setting a prosecutor may consider not only serious criminal acts, but less serious conduct, including disorderly person offenses, offenses found under the juvenile code, and acts that technically do not rise to the level of adult criminal conduct.

This Court has observed that "[j]uvenile delinquency, or 'youth crime' is recognized as a major social problem in our society. In New Jersey, as elsewhere, juveniles are responsible for a large share of the total amount of crime." *State v. Presha,* 163 *N.J.* 304, 314, 748 *A.*2d 1108 (2000) (quoting *Juvenile Justice Master Plan* by New Jersey Juvenile Justice Commission, at 6 (April 1999)) (internal quotation marks omitted). From that perspective, it is entirely consistent with the statute for a prosecutor to consider juvenile offenses when determining whether an applicant's history includes "the use of physical violence towards others[.]" *N.J.S.A.* 2C:43–12(12). More broadly, an applicant's juvenile record clearly

is relevant to the question whether admission into a PTI program "can reasonably be expected to deter future criminal behavior by an applicant[.]" *N.J.S.A.* 2C:43–12a(1).

In urging a contrary conclusion, defendant cites a Law Division decision, *State v. Wood,* 211 *N.J.Super.* 110, 117–20, 510 *A.*2d 1210 (1986), that explicitly concluded that a prosecutor cannot consider an applicant's juvenile offenses when evaluating whether the applicant is suitable for PTI. A number of higher courts, however, impliedly have overruled *Wood* by taking into account an applicant's lack of juvenile record in the course of their appellate review. *See, e.g., State v. Caliguiri,* 305 *N.J.Super.* 9, 18, 701 *A.*2d 920 (App.Div.1997) (noting applicant's lack of juvenile record), *aff'd as modified,* 158 *N.J.* 28, 726 *A.*2d 912 (1999); *State v. Fitzsimmons,* 291 *N.J.Super.* 375, 378, 677 *A.*2d 767 (App.Div.) (same), *certif. denied,* 146 *N.J.* 568, 683 *A.*2d 1163 (1996). To the extent a question remains concerning whether *Wood* is persuasive authority in these circumstances, we expressly overrule it.

We likewise reject defendant's argument that a prosecutor may not consider, for any purpose, those aspects of an applicant's juvenile and adult histories that contain dismissed offenses. A prosecutor who takes into account such information as part of an applicant's overall record is acting like a trial court that sentences a defendant whose criminal history includes prior arrests. In *State v. Green,* we concluded that a sentencing court properly could consider a defendant's prior arrest record, including arrests for offenses that ultimately had been dismissed. 62 *N.J.* 547, 571, 303 *A.*2d 312 (1973). The Court observed that "many factors, including an arrest record, contribute toward the composite picture of the 'whole man' that the trial court should necessarily have to rationally sentence a defendant." *Id.* at 566, 303 *A.*2d 312. We also explained that "the sentencing judge might find it significant that a defendant who experienced an unwarranted arrest was not deterred by that fact from committing a crime thereafter." *Id.* at 571, 303 *A.*2d 312.

Analogizing a prosecutor's function in this context to that of a sentencing court is not new. In *State v. Pickett*, the Law Division, in a decision written by Judge (now Justice) Long, observed that a prosecutor's analysis in these circumstances "is much like that which is made in connection with sentencing, where the so-called whole man is evaluated by the court in order to arrive at an appropriate disposition." 186 *N.J.Super.* 599, 604, 453 *A.*2d 291 (1982). Specifically, the *Pickett* court held that in evaluating an individual's application the PTI director in that case could consider evidence that the police had seized in violation of the Fourth Amendment. *Id.* at 609, 453 *A.*2d 291. The court correctly reasoned that the policy considerations that warranted exclusion of such evidence in a trial setting did not extend to the circumstances surrounding a director's evaluation of a PTI application. *Id.* at 604–09, 453 *A.*2d 291.

Judge Long further explained:

> As in the case of sentencing, the difficult judgmental function which is required of the director in attempting to assess human nature in order to evaluate the potential for rehabilitation can only be aided by the free flow of information.... Like the sentencing judge, the [PTI] director is "not required to wear blinders" in assessing the circumstances of the offense involved.
>
> [*Id.* at 608, 453 *A.*2d 291 (quoting *State v. Marzolf*, 79 *N.J.* 167, 185, 398 *A.*2d 849 (1979)).]

There are limits, however, to the use of a defendant's criminal arrest history. We stressed in *Green, supra*, "that the sentencing judge shall not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt." 62 *N.J.* at 566, 303 *A.*2d 312. We sound the same warning here. Under no circumstances may a court, prosecutor, or PTI director infer guilt in respect of any dismissed charge or count of an indictment contained in an applicant's record. Those aspects of a defendant's history, if considered at all, may be reviewed solely from the perspective of whether the arrest or dismissed charge should have deterred the defendant from committing a subsequent offense. Moreover, a prosecutor's or program director's written rejection of a given application must reflect only a proper consideration of such information. Likewise, some juvenile adjudications

may be so minor or distant in time that they provide no reasonable basis on which to reject an otherwise meritorious PTI application.

We next turn to defendant's second argument that the prosecutor committed a patent and gross abuse of discretion under the applicable case law. We acknowledge that defendant has presented numerous letters attesting to his good character, and has asserted other facts in mitigation as part of his application. Those facts, however, cannot detract from the nature of his acts or from the fact that, as observed by the trial court, defendant appreciated the wrongful nature of his conduct and simply disregarded it. We are satisfied that such conduct bears directly on defendant's amenability to rehabilitation, a central inquiry under the statute. *Nwobu, supra,* 139 *N.J.* at 255, 652 *A.*2d 1209.

In *State v. Warriner,* a case somewhat similar to this one, the Appellate Division upheld a prosecutor's decision to deny PTI to a defendant arrested for carrying an illegal firearm. 322 *N.J.Super.* 401, 731 *A.*2d 86 (1999). The program director's report highlighted the fact that the defendant, an avid gun collector, knew that his weapon was illegal yet tried to hide it. *Id.* at 409, 731 *A.*2d 86. The director's report also noted that the weapon was involved in an underlying domestic violence incident. *Ibid.* Conversely, the report indicated that the defendant had no prior convictions, was gainfully employed, and had two children. *Ibid.* Notwithstanding those mitigating factors, the Appellate Division upheld the prosecutor's decision to deny PTI. *Id.* at 408, 731 *A.*2d 86.

We reason similarly. The facts surrounding the gun, drug, and open-container charges formed an adequate basis to support the prosecutor's decision when considered in concert with other relevant factors found under the statute and Guidelines. In that respect, we note that in evaluating an application a prosecutor or PTI director is not limited to the offenses formally contained in a plea agreement. In that connection, those officials "may look beyond the plea to the actual facts when they are not in dispute, as it is the conduct not the charge [that] governs." *State v.*

*Imbriani,* 280 *N.J.Super.* 304, 316, 654 *A.*2d 1381 (Law Div.1994), *aff'd,* 291 *N.J.Super.* 171, 677 *A.*2d 211 (App.Div.1996).

## B.

We do not share the dissent's conclusion that at every stage of the process the trial court, prosecutor, and PTI director inferred that defendant was guilty of the dismissed offenses contained in his juvenile and adult record. In our view, the trial court cited to that record to buttress its conclusion that notwithstanding defendant's prior contact with the criminal justice system and his familiarity as a bondsman with the consequences of carrying a gun without a permit, he nonetheless engaged in such conduct here. As suggested earlier, the trial court's analysis bears on whether defendant is amenable to rehabilitation, a critical and permissible inquiry under the statute and Guidelines.

The prosecutor and PTI director echo the trial court's sentiment. We acknowledge that some of the language contained in the director's rejection letter is ambiguous in respect of why or from what perspective the director had considered the dismissed charges. One example is this statement: "Although both of these charges [stemming from the 1992 adult arrests] were dismissed, they display a pattern of disregard for the criminal justice system, and indicate that PTI counseling would be ineffective in deterring you from further criminal activity." When viewed within the context of the entire letter, that statement arguably reflects no more than what this Court suggested in *Green, supra,* that an unwarranted arrest has some relevance in that it may indicate a defendant's amenability to rehabilitation in the wake of a prior encounter with the law. 62 *N.J.* at 571, 303 *A.*2d 312.

In other words, the director's letter is open to interpretation. The record as a whole, however, is neither clear nor convincing that the prosecutor or director rejected defendant's application based on either impermissible inferences of guilt or factors deemed irrelevant under applicable case law. Although we should not overstate its significance, defendant's history of juvenile and

adult arrests demonstrates a familiarity with our criminal justice system and a concomitant appreciation of the wrongfulness of his present conduct. Solely from that perspective, the arrests are relevant.

Lastly, even if we agreed with our dissenting colleague and discounted completely defendant's prior arrest history, a remand would not be required. We would be constrained to uphold the prosecutor's determination based on those remaining parts of the record on which he relied. We reiterate that in this setting "[j]udicial review is 'available to check only the most egregious examples of injustice and unfairness.'" *DeMarco, supra,* 107 *N.J.* at 566, 527 *A.*2d 417 (internal citation omitted). For the reasons already expressed, we hold that defendant has not satisfied that difficult burden.

## C.

To summarize, the statute and Guidelines do not preclude a prosecutor from considering a PTI applicant's juvenile and adult history, including prior arrests. Officials who implement the PTI process, however, may draw only limited inferences from criminal histories that contain dismissed offenses. Even without the dismissed juvenile and adult offenses, defendant's prior juvenile history included two separate probationary terms in 1987 for the various offenses noted earlier. Based on that history, the facts surrounding the present offenses, and the other permissible factors relied on by the program director, we are satisfied that the prosecutor did not commit a patent and gross abuse of discretion in rejecting the application before us.

## IV.

The judgment of the Appellate Division is affirmed.

ALBIN, J., dissenting.

This appeal raises the question whether, in the context of a defendant's application for enrollment into a pretrial intervention

program (PTI), the PTI director, prosecutor, and reviewing trial judge may consider a defendant's prior arrests on unsubstantiated and dismissed charges. My colleagues have concluded that prior unsubstantiated and dismissed charges have relevance in the PTI decision-making process. I respectfully disagree. A charge that has no factual support in the record is entitled to no weight in determining an applicant's amenability to rehabilitation. In this case, the officials reviewing Brooks' application for the PTI program drew inferences of guilt from dismissed charges, without determining whether there was any validity to the charges. The use of bare arrests to draw inferences of guilt makes hollow the presumption of innocence and denied Brooks his right to fundamental fairness.

On September 23, 1998, after a motor vehicle stop for speeding in Berkley Heights, James Brooks, then age twenty-four, was arrested for unlawful possession of a handgun, possession of a controlled dangerous substance, and driving with an open container of alcohol. Brooks, a self-employed bail bondsman and private investigator living in Maryland, had been visiting his mother in New Jersey at the time of the stop. A search of his car revealed a loaded .380 9mm handgun under the floor mat in the back seat, an open bottle of beer, and a fraction of a gram of burnt marijuana in an ashtray.

Brooks applied for admission into the Union County PTI program. The PTI director rejected Brooks' application because of the "serious nature of the charges coupled with [his] continual involvement" with the criminal justice system. In her rejection letter, the director listed Brooks' "numerous encounters with the police," which, in her estimation, made him unsuitable for PTI. The director recounted that on two occasions in 1987, Brooks, then age thirteen and fourteen, was charged with juvenile offenses, adjudicated delinquent, and ordered to serve two one-year probationary terms. The director also detailed Brooks' six other arrests as a juvenile in 1987 and 1988 and his two arrests as an

eighteen and nineteen-year-old adult in 1992, all of which resulted in dismissed charges.

As far as can be discerned from the record, the director did nothing to verify whether there was any truth to the dismissed charges. Nor does the record suggest that Brooks was asked to respond to any questions during his PTI interview concerning the dismissed charges. Nevertheless, without any facts substantiating the validity of the two adult charges, the director found: "Although both of these charges were dismissed they *display a pattern of disregard for the criminal justice system,* and indicate that PTI counseling would be ineffective in deterring you from further criminal activity." (Emphasis added).

The PTI director did not distinguish the juvenile adjudications, which were arguably remote in time, from the dismissed charges in determining that Brooks was unsuitable for a diversionary rehabilitation program. The dismissed charges were paraded throughout four of the nine pages of the rejection letter, with repeated commentaries from the director that "encounters with police" had not deterred Brooks from "criminal activity" and that the encounters *"display[ed] a pattern of disregard for the criminal justice system."* (Emphasis added).

Similarly, after Brooks appealed his PTI rejection to the Superior Court, Law Division, the assistant prosecutor representing the State highlighted the unsubstantiated charges as a basis for denying Brooks enrollment into the PTI program. Although the 1992 adult charges against Brooks were dismissed and Brooks had represented at the PTI appeal hearing that he had been "wrongly charged," the assistant prosecutor argued to the trial court: "PTI is to rehabilitate. He already had a probationary period and already had prior contacts with ... the system as an adult, ... and Mr. Brooks is still engaging in these types of activities[.] ... Mr. Brooks is not an appropriate candidate for PTI." The assistant prosecutor did not attempt to supply any factual predicate to support the conclusion that Brooks committed any of the underlying offenses on the dismissed charges. As with the PTI director,

the assistant prosecutor simply inferred that Brooks must have been guilty of some wrongdoing because he had been arrested.

Moreover, in its brief to the Appellate Division, the State cited the dismissed juvenile and adult charges as representing part of " 'a pattern of disregard for the criminal justice system.' " In its brief to this Court, the State contends that bare arrests satisfied the following criteria: " '[t]he extent to which the applicant's crime constitutes part of a continuing pattern of antisocial behavior,' [N.J.S.A. 2C:43–12e(8),] 'the extent to which [the applicant] may present a substantial danger to others,' [N.J.S.A. 2C:43–12e(9),] the applicant's 'history of physical violence toward others,' [N.J.S.A. 2C:43–12e(12),] and 'any involvement of the applicant with organized crime' [N.J.S.A. 2C:43–12e(13)]." In this sense, the State has elevated arrests premised on unsubstantiated charges to the functional equivalent of convictions.

The dismissed juvenile and adult charges were also given weight by the trial court in affirming Brooks' rejection from PTI. The trial court noted: "The State made one point which is true. [Brooks] is not a person with no contact to the system ever. Some of the contact was in '87, when he was a kid, through '88, and then new contact when he was an adult in '92/'93—'92 twice." The court did not distinguish between Brooks' juvenile adjudications and his unsubstantiated juvenile and adult charges. The trial court continued: ."In weighing this, ... I can't say the State and [PTI] director abused her [sic] discretion in evaluating–adjudicating this issue. Truthfully said, I think the State's right and the director's right in saying no to him at this point in time."

The record ·is clear that at every stage of the PTI process, inferences of guilt were drawn from bare arrests by the PTI director, the assistant prosecutor, and the trial court.

## I.

It has long been recognized that a sentencing court may consid-er many factors in assembling the composite picture of the "whole man." *State v. Green,* 62 *N.J.* 547, 566–68, 303 *A.2d* 312 (1973).

In viewing the "whole person," a trial court may give consideration to an arrest record, provided that it bears relevance to legitimate sentencing concerns. In *State v. Green, supra,* this Court determined that an arrest record might be relevant under certain circumstances, but cautioned against the misuse of such information:

> In our view an arrest could be relevant for several reasons. One is that it may lead to factual material which the defendant does not contest and which may bear upon the character of the sentence. For example, the arrest may relate to an offense the defendant does not dispute, which offense was disposed of without further action as part of a plea bargain involving other offenses. Again, the sentencing judge might find it significant that a defendant who experienced an unwarranted arrest was not deterred by that fact from committing a crime thereafter. There may be still other reasons depending upon the total circumstances which could warrant at least consideration of the fact of an arrest. We need not try to anticipate all situations. *The important limitation of course is that the sentencing judge shall not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt.*
>
> [62 *N.J.* at 571, 303 A.2d 312 (emphasis added).]

The concerns of a PTI reviewing court are similar to those of a sentencing court. *N.J.S.A.* 2C:43–12e and *Rule* 3:28, Guideline 3, set forth a number of factors to be weighed in determining whether a defendant is a suitable candidate for entry into a PTI program. The factors cited in the statute and rule were not intended to be exhaustive lists of all relevant considerations to be weighed in the PTI review process. The PTI director, prosecutor, and reviewing court, no less than a sentencing court, must also take account of the "whole person." Moreover, in doing so, it is clear that the rule in *Green* prohibiting the use of an unsubstantiated charge to infer guilt must apply equally to the PTI process.

In order to overcome the prosecutorial veto of his admission into PTI, Brooks must clearly and convincingly establish a patent and gross abuse of prosecutorial discretion. *State v. Nwobu,* 139 *N.J.* 236, 246, 652 A.2d 1209 (1995) (quoting *State v. Kraft,* 265 *N.J.Super.* 106, 111–12, 625 A.2d 579 (App.Div.1993)). An abuse of prosecutorial discretion can be shown where the decision to reject a defendant from PTI was based on: 1) a failure to consider all relevant factors; 2) a consideration of irrelevant or inappropri-

ate factors; or 3) a clear error in judgment. *State v. Bender,* 80 *N.J.* 84, 93, 402 *A.*2d 217 (1979). "If the prosecutor's abuse arises from a clear error of judgment, a court may order that a defendant be admitted into the program." *State v. DeMarco,* 107 *N.J.* 562, 567, 527 *A.*2d 417 (1987). However, "[w]hen a prosecutor fails to consider all relevant factors or considers inappropriate factors, a court may ... remand the matter for further consideration." *Ibid.* (citing *State v. Maddocks,* 80 *N.J.* 98, 105, 402 *A.*2d 224 (1979)). *See also, e.g., State v. Caliguiri,* 158 *N.J.* 28, 37, 726 *A.*2d 912 (1999); *State v. Kern,* 325 *N.J.Super.* 435, 439–40, 739 *A.*2d 969 (App.Div.1999).

The record before us is rife with inferences of guilt drawn from Brooks' unsubstantiated and dismissed charges in violation of the *Green* standard. The PTI director and assistant prosecutor concluded that these charges "display a pattern of disregard for the criminal justice system." In this context, the director's repeated references to Brooks' "continual involvement" and "numerous contacts" with the system were a thin veneer masking her implicit assumption that Brooks was more than likely guilty of those unsubstantiated and dismissed charges. In asking the trial court to defer to the decision denying PTI enrollment, the assistant prosecutor made reference to the remote juvenile adjudications and dismissed adult charges, and then charged: "Mr. Brooks is still engaging in these types of activities."

The standard of enhanced deference to the prosecutor cited in the majority opinion does not permit deference to the use of irrelevant or inappropriate factors in denying a PTI application. *See Nwobu, supra,* 139 *N.J.* at 247, 652 *A.*2d 1209; *Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217. Brooks was entitled to have his PTI application reviewed in light of relevant factors contained in the record that were truthful and reliable.

I would have no objection if the use of an arrest were predicated on the basis of a factual record that supported the truth of the charge by some manner of proof. For example, if a defendant entered a plea of guilty to certain charges in a multi-count

indictment and the factual basis for his plea substantiated the dismissed charges, then for sentencing or PTI purposes, I see nothing improper in the use of such information. Similarly, if the defendant admitted in a presentence or PTI interview that there was truth to the prior charges, even if dismissed, there would be a factual predicate for the appropriate use of that information. *Green, supra,* 62 *N.J.* at 571, 303 *A.*2d 312. *See also, e.g., State v. Sinclair,* 582 *N.W.*2d 762, 765 (Iowa 1998) (remanding for resentencing because sentencing court may not consider or rely on charges of unprosecuted offenses unless they are admitted by defendant or otherwise proved); *State v. Carbajal,* 177 *Ariz.* 461, 868 *P.*2d 1044, 1046 (Ct.App.1994) (stating rule that trial court may not consider mere arrests as aggravating factors where there is no evidence that a crime or some bad act was probably committed by defendant); *People v. Gomez,* 247 *Ill.App.*3d 68, 187 *Ill.Dec.* 112, 617 *N.E.*2d 320, 324 (1993) (reiterating rule that consideration of mere arrest without supporting evidence to establish reliability constitutes error); *Craddock v. State,* 64 *Md.App.* 269, 494 *A.*2d 971, 975–76 (Sp.App.) (finding no evidence to support inference that sentencing judge considered defendant's prior arrests, but stating that judge would have erred had he considered a "bare list" of prior arrests that did not result in convictions), *cert. denied,* 304 *Md.* 297, 498 *A.*2d 1184 (1985); *Nukapigak v. State,* 562 *P.*2d 697, 701 (Alaska 1977) (ruling that "a bare accusation or the mere fact of arrest is not sufficient to support a conclusion that a defendant has previously engaged in criminal conduct"), *aff'd on reh'g,* 576 *P.*2d 982 (Alaska 1978).

There may be other ways to provide a factual predicate for a dismissed charge, but none appear in this record. In the case of James Brooks, there is nothing to substantiate any of the dismissed charges that were used to draw inferences of guilt. I would remand this matter for reconsideration so that the dismissed charges may be viewed in light of the proper standards previously enunciated by this Court.

## II.

In addition, I believe that it is time for this Court to revisit an assumption in *Green* that lacks soundness and logic. *Green* suggested that a "sentencing judge might find it significant that a defendant who experienced an unwarranted arrest was not deterred by that fact from committing a crime thereafter." 62 *N.J.* at 571, 303 *A.*2d 312. There is no rational basis to conclude that a defendant otherwise innocent but subject to an unwarranted arrest is more likely to be deterred from committing a crime than a person who was never subject to an unwarranted arrest. Under cover of the *Green* rationale, defendants will find that they are not protected by the presumption of innocence as PTI directors and prosecutors, without having to offer proof of guilt, continue to infer guilt from dismissed charges. It is not that prosecutors and PTI directors, or even judges, are more likely than others to infer guilt from dismissed charges. It is that the mental gymnastics required by *Green*—you may consider the dismissed charges but do not infer guilt from them—are beyond the power of the human mind. *See, e.g., Bruton v. United States,* 391 *U.S.* 123, 134 n. 8, 88 *S.Ct.* 1620, 1627 n. 8, 20 *L.Ed.*2d 476, 483 n. 8 (1968) (quoting *Nash v. United States,* 54 *F.*2d 1006, 1007 (2nd Cir.) (Hand, J.), *cert. denied,* 285 *U.S.* 556, 52 *S.Ct.* 457, 76 *L.Ed.* 945 (1932)). This Court should reject the paralogical reasoning of *Green* that permits the misuse of unsubstantiated charges. The officials in the PTI reviewing process should make decisions based on truthful and reliable information. Speculation and innuendo have no place in such councils.

## III.

Unlike my colleagues, I cannot agree that James Brooks received a fair review of his PTI application based only on relevant criteria. Enhanced deference to a flawed decision-making process will not enhance the administration of justice. I conclude that the improper use of Brooks' arrest record requires a remand for reconsideration by the PTI director and prosecutor.

*For affirming*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO, LaVECCHIA, and ZAZZALI—5.

*For reversing and remanding*—Justice ALBIN—1.