**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3320-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMMON T. ANDREWS, a/k/a
TYREE ANDREWS,

    Defendant-Appellant.

_____

Submitted November 4, 2021 – Decided December 30, 2021

Before Judges Alvarez and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-04-1014.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Caitlinn Raimo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Ammon T. Andrews was convicted of second-degree robbery, N.J.S.A. 2C:15-1, but acquitted of third-degree terroristic threats, N.J.S.A. 2C:12-3(b). On March 6, 2019, the trial judge sentenced defendant to ten years' imprisonment, subject to the imposition of the No Early Release Act's (NERA) eighty-five percent parole ineligibility. N.J.S.A. 2C:43-7.2. Defendant appeals his conviction and sentence. We affirm.

The events leading to the indictment occurred on December 4, 2017. C.M., the fifty-eight-year-old victim, gave an account substantially corroborated by surveillance footage from the liquor store where he encountered defendant that evening. C.M. testified he talked casually with defendant while waiting to be served. He knew defendant from the community, although he had not previously spoken to him and did not know his name. Defendant watched C.M. pull out over $1,000 in cash to pay for his purchase.

C.M. agreed to give defendant a ride home. Once in the car, defendant grabbed the cash out of the victim's pocket as the men exchanged punches. Defendant jumped out of the car, ran to the driver's side, and as C.M. tried to give chase, defendant slammed the door onto C.M.'s leg several times to keep him from leaving, then backed away. C.M. briefly attempted to chase defendant, who was then thirty-seven years old.

A-3320-18

The video did not capture the events in the car or record sound, but it did depict the victim repeatedly flashing his brake lights in a vain effort to draw attention to the robbery. C.M. said he also sounded his horn while flashing his lights, until defendant threatened to kill him if he did not stop. The prosecutor played the video for the jury while C.M. testified.

When the authorities arrived at the scene, C.M. spoke with Orange Police Department Officer Damon Johnson. Defense counsel elicited during C.M.'s cross-examination that he told Johnson he had $1,000, and that when the officer asked whether he had tried buying drugs from defendant, C.M. pulled out a bag of heroin and denied he needed to buy anything because he had some already. While on the stand, the victim began to visibly shake, explaining outside the jury's presence that he suffered from anxiety and panic attacks.

Phone records established the victim and defendant spoke on December 5, the day after the robbery, and that C.M. on that date gave a recorded statement at the police station to Detective Franchot Taylor. C.M. later identified defendant from a photo array.

Defense counsel called Taylor, presumably to develop the discrepancies between C.M.'s statements at the scene and those he made during the trial. While testifying, however, Taylor volunteered that in the days following his

3

interview of the victim at the police station, C.M. reported he was threatened by defendant. Taylor said he did not know whether the threats were conveyed on the phone or in some other fashion.

Defendant immediately and unsuccessfully moved for a mistrial based on the unexpected testimony. The judge struck the testimony and instructed the jurors to ignore it. She repeated the instruction in her closing charge. While deliberating, jurors requested a transcript of Taylor's December 5 interview. They reached a verdict before receiving it.

In the relevant section, we describe the statutory factors the judge relied upon in sentencing defendant. That portion of the opinion also includes the judge's review of defendant's background.

Now on appeal, defendant raises the following issues for our consideration:

> POINT I
>
> THE COURT ERRED BY DENYING DEFENDANT'S MOTION FOR A MISTRIAL IN A ROBBERY PROSECUTION AFTER AN OFFICER BLURTED OUT AN UNELICITED, UNCHARGED, IRREDEEMABLY PREJUDICIAL HEARSAY ALLEGATION THAT THE DEFENDANT HAD ENGAGED IN WITNESS TAMPERING.

4

<u>POINT II</u>

THIS COURT SHOULD VACATE IMPOSITION OF THE MAXIMUM NERA TERM, AND REMAND FOR RESENTENCING. IT WAS REVERSIBLE ERROR FOR THE COURT TO TREAT AS AGGRAVATING (1) THAT THE DEFENDANT MAINTAINED HIS INNOCENCE, AND (2) THAT THE DEFENDANT HAD PRIOR DISMISSED CHARGES.

I.

"[A]n appellate court will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice." <u>State v. Jackson</u>, 211 N.J. 394, 407 (2012); <u>State v. Harvey</u>, 151 N.J. 117, 205 (1997). "Likewise, when weighing the effectiveness of curative instructions, a reviewing court should give equal deference to the determination of the trial court." <u>Khan v. Singh</u>, 397 N.J. Super. 184, 202-03 (App. Div. 2007) (quoting <u>State v. Winter</u>, 96 N.J. 640, 647 (1984)).

Defendant now argues the judge's denial of the motion for a mistrial was reversible error because Taylor's comment was so prejudicial as to deprive him of a fair trial. He also argues that alleged inconsistencies in the victim's testimony and statements, along with his demeanor on the stand, rendered the victim so incredible that no jury could have convicted defendant absent Taylor's comment. We find no abuse of discretion.

5

Defendant's cited cases are inapposite because the judge promptly addressed the officer's fleeting comment during direct examination. Even if the statement was inadmissible hearsay violating the confrontation clause, the judge immediately instructed the jury to ignore it and reiterated the instruction during closing. Jurors are presumed to follow instructions. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019). The judge said:

> The jury is instructed to disregard any response after ["]no["] to the question did he mention receiving a call from anyone on behalf of [defendant]. Anything said after ["]no["] is non-responsive to the question and is stricken from the record. The jury is directed not to consider the response after ["]no["] in its deliberations.

In the final jury instructions, the court repeated that stricken evidence was not to be considered during deliberations and must be disregarded. It seems clear that Taylor's statement could not have been so prejudicial that the jury was unable to assess the evidence independently, especially since they acquitted defendant of the terroristic threats charge. Granted, the terroristic threats charged were allegedly made during the confrontation between defendant and C.M., but it is not unreasonable to posit that the jury would have been more inclined to convict had they ignored the judge's instruction.

Any suggestion that C.M. would have been more comprehensively cross-examined and his credibility more thoroughly damaged had the judge granted a

mistrial and given defendant a second opportunity to question the victim is highly speculative. Not to mention, probing into any potential communications between defendant and the victim entailed its own risks.

The judge's instruction in this case was "firm, clear, and accomplished without delay." See State v. Prall, 231 N.J. 567, 586 (2018) (quoting State v. Vallejo, 198 N.J. 122, 134 (2009)); see also State v. Wakefield, 190 N.J. 397, 440 (2007) (holding trial judge's "prompt[] and effective[]" curative instruction remedied any prejudice from prosecutor's improper comments during opening statement); State v. Papasavvas 163 N.J. 565, 614 (2000) (holding immediate curative instructions "were sufficient to remedy [an expert witness's] improper testimony.").

In support of his position, defendant reminds us that the jury asked for a transcript of Taylor's interview of C.M. However, that interview occurred before C.M. told Taylor about the alleged threats, and regardless, the jury rendered its verdict before receiving a response. The judge's decision to deny the application for a mistrial was therefore not an abuse of discretion that resulted in a manifest injustice. In the context of a very strong state's case, it is nothing more than speculation to suggest the judge deprived defendant of an opportunity for a fair trial.

A-3320-18

II.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). "[A]ppellate courts are cautioned not to substitute their judgment for those of our sentencing courts." State v. Miller, 237 N.J. 15, 28 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)).

The transcript includes the judge's discussion regarding defendant's numerous dismissed juvenile and adult charges, along with other relevant circumstances. We are not convinced, however, that State v. K.S., 220 N.J. 190, 199-200 (2015), supports the proposition urged by defendant: that trial judges may no longer rely upon arrests in assessing aggravating and mitigating sentencing factors. The language in K.S. appears relevant specifically to pretrial intervention (PTI) applications. In the opinion, the Court rejected the declaration in State v. Brooks, 175 N.J. 215 (2002), analogizing the prosecutorial role in reviewing PTI applications to that of a sentencing court with regard to arrests that did not result in convictions. K.S., 220 N.J. at 199 (quoting Brooks, 175 N.J. at 229). Since the Court rejected the analogy, we infer the Court left trial judges the option to consider arrests in considering the entirety of a defendant's circumstances.

In this case, defendant had thirteen juvenile arrests resulting in five adjudications of delinquency, and sixteen adult arrests resulting in three prior convictions from two indictments, including first-degree robbery, unlawful possession of a weapon, and first-degree attempted murder. These convictions resulted in concurrent NERA ten-year prison terms, and defendant violated parole on those offenses twice. He maxed out on the sentences, and at the time of this arrest had a municipal bench warrant outstanding. The judge properly analyzed defendant's entire criminal history—including offenses for which he was not found guilty—and his refusal to take responsibility for this crime in finding aggravating factor three. See N.J.S.A. 2C:44-1(a)(3). The judge's application of aggravating factor six was soundly grounded in defendant's prior convictions. See N.J.S.A. 2C:44-1(a)(6). Defendant's prior robberies also highlighted the need to deter him individually as well as others. See N.J.S.A. 2C:44-1(a)(9).

The judge reviewed each requested mitigating factor and found only mitigating factor eleven, to which she gave slight weight because every child whose parent is incarcerated suffers a loss. See N.J.S.A. 2C:44-1(b)(11). Hence, the judge did not abuse her discretion in her analysis of the aggravating

and mitigating factors.  Nor did she abuse her discretion by imposing the maximum term for this second-degree offense.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-3320-18