815 A.2d 543 (2003)
357 N.J. Super. 428
STATE of New Jersey, Plaintiff-Appellant,
v.
Anthony HESTER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 17, 2002.
Decided February 13, 2003.
*544 Michael M. Rubbinaccio, Morris County Prosecutor, attorney for appellant (Joseph Connor, Jr., Assistant Prosecutor, on the brief).
Yvonne Smith Segars, Public Defender, attorney for respondent (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the brief).
Before Judges STERN, COBURN and ALLEY.
The opinion of the court was delivered by STERN, P.J.A.D.
Pursuant to N.J.S.A. 2C:35-14(c),[1] the State appeals from the sentencing of defendant, over its objection, to "special probation," which the parties also refer to as a "Drug Court program." On appeal, the State argues that the trial court's decision must be reversed "because the prosecutor did not commit a patent and gross abuse of discretion in vetoing defendant's application" for admission into the program. According to the prosecutor, "defendant's criminal history, his previous apathy towards rehabilitation and his prior poor performance on probation more than justified the prosecutor's position" rejecting the "Drug Court" application. The State also objects to the fact that the judge decided to permit defendant's entry into the program before the charges were disposed of and, after the sentence was imposed, vacated the stay of sentence before the appeal was decided. We conclude that the admission of defendant into the program over the prosecutor's objection was improper, and remand for further proceedings.
According to the State's submission to the trial court, on August 8, 2001, a Morristown police officer observed the defendant ingesting CDS while sitting on a bench in Abbett Avenue Park. The officer approached defendant and "a fold containing suspected heroin residue was recovered from the bench." Defendant was arrested, and incident thereto, another fold was recovered. A plastic bag containing 50 "small `corner bags' of suspected cocaine" was found during a search of defendant at the time of his commitment to the County Jail.
Defendant was 42 years old at the time of arrest. As reported in a "Chemical Dependency Evaluation" prepared for the Office of the Public Defender by Thomas Melahn, a licensed social worker, defendant began consuming alcohol when he was seventeen years old. He began using cocaine while socializing in New York City in his twenties. Within six months of his first introduction to cocaine, he began purchasing cocaine in the Morristown area, and ingesting cocaine three to four nights during the week and on the weekends. Defendant became "hooked" on heroin immediately after first using it in July 2001.
*545 He used two bags each day until his arrest on August 8, 2001.
Defendant held several jobs over his lifetime. In 1979, he worked as an orderly in the Morris View Nursing Home. After a year there, he worked in a Friendly's Restaurant. From 1982 to 1993, he worked in the bookstore and the kitchen at the College of Saint Elizabeth. In 1996, he worked cleaning floors with an uncle. After this uncle moved from the area, he worked at the Mennen Arena in Morristown and at other jobs.
Defendant has six prior convictions; all were drug-related. On April 16, 1992, he was convicted of third degree distribution of cocaine, in violation of N.J.S.A. 2C:35-5(b)(3). He was sentenced to two years of probation.[2] On October 23, 1992, he was placed on probation for two years for possession of cocaine under N.J.S.A. 2C:35-10(a). On August 6, 1993, defendant was again placed on probation for possession of CDS, N.J.S.A. 2C:35-10(a)(1). He was required to enroll in an inpatient drug program as a condition of that probation. On October 2, 1997, defendant was sentenced on two accusations charging possession of cocaine and possession of cocaine and heroin, in violation of N.J.S.A. 2C:35-10(a)(1). He was placed on probation for two years with 50 days to be served in the county jail. He was required to "attend and com[p]lete an outpatient-drug/alcohol treatment program approved by probation." On April 4, 1998, defendant was again sentenced for possession of cocaine in violation of N.J.S.A. 2C:35-10(a)(1). The court ordered him to serve two years probation with urine monitoring. On December 22, 1998, defendant was again convicted of possession of cocaine under N.J.S.A. 2C:35-10(a)(1) and sentenced to the custody of the Commissioner of Corrections for four years.[3]
On March 19, 2002, defendant filed an "Application to the Drug Court Program" with respect to the August 8, 2001 arrest. On April 22, 2002, the State filed a letter memorandum in opposition to the application, asserting that (1) defendant's performance while on probation "was horrendous," (2) he failed to take advantage of an earlier opportunity to enter an inpatient drug treatment program in lieu of the four year custodial sentence, (3) he was a "significant street-level drug dealer," (4) he was found with fifty bags of cocaine in a playground "frequented by juveniles," and (5) the community's "interest in seeing the defendant punished" outweighed his "interest in rehabilitation." On May 3, 2002, the Morris County Drug Program issued a "Notice of Legal Eligibility Decision" rejecting the application because defendant posed a "significant threat to the community," and because of his "profit motive" in dealing drugs.
Defendant appealed the rejection and, on June 17, 2002, the prosecutor filed a letter "brief in opposition" to his appeal. The State noted the pending charges of possession of cocaine and heroin and possession with intent to distribute cocaine, and added that "[a]lthough not charged on a complaint, there is probable cause to believe that [defendant] committed the *546 crime of possession of cocaine with intent to distribute within 500 feet of a public park in violation of N.J.S.A. 2C:35-7.1." The State noted that N.J.S.A. 2C:35-14(c) provided that the court could not place defendant in the program over the State's objection because of the "earlier distribution conviction," and "rejected the defendant's Drug Court application" because of his prior conviction under N.J.S.A. 2C:35-5 and "the facts and circumstances of the current offense."
On June 20, 2002, the trial court held a hearing on the application. The defendant offered the Melahn report. In his report, Melahn analyzed the nine criteria for admission into the program, as embodied in N.J.S.A. 2C:35-14(a). In a supplemental report, Melahn concluded:
Prior to his introduction to narcotics, [defendant] was a gainfully employed individual with no prior criminal history... He has not shown in any manner to be a threat to the community. Even his criminal history has no acts of violence. Mr. Hester may have difficult time coming to the reality of his drug problems and a need to gain treatment, but he is certainly a viable candidate for rehabilitation.
Additionally, the Drug Court's "tas[c] evaluator," Samantha Brennan, noted at the hearing that defendant "appears motivated" and that "whatever his motivation is, clinically he is appropriate for Drug Court." Also, defendant asserted that his willingness to remain in the County Jail while his application was being processed and until program bed space became available, without obtaining post-judgment credits, reflected his commitment to the program.
On June 27, 2002, the judge "overrule[d] the rejection," and found that the State committed a "patent and gross abuse of prosecutorial discretion" in rejecting defendant's application. He applied the standard used in evaluating the State's decisions on admissions to the Pretrial Intervention Program ("PTI"), although he "question[ed] the application of this standard" with respect to the Drug Court program because PTI dealt with pretrial diversion from prosecution. In finding a "patent and gross abuse of discretion," the judge noted that defendant's prior convictions were symptomatic of his drug addiction. The judge concluded that defendant's prior conviction for distribution of a "small amount of CDS" was motivated by his need to generate income to purchase drugs for his own consumption and not "strictly for profit." He determined that the State was incorrect in labeling defendant a "street level dealer" without reference to his addiction. The judge found that defendant's possession of fifty bags of cocaine in this case was not conclusively for sale because the record indicated that an addict could consume such amounts and the defendant was supported by his mother, with whom he lived.[4] The judge further found that the prosecutor failed to acknowledge that defendant's prior behavior, including his non-compliance with probation, was caused by relapse to drug use. The judge also concluded that the State neglected to consider the need to help solve defendant's addiction in opposing his admission for treatment. The judge felt *547 defendant had reached "rock bottom" and was committed to the program. There was support for the judge's conclusions in Melahn's report and the comments of Ms. Brennan.
The judge also made specific findings regarding the program. He cited to documents published by the State as providing guidance in sentencing defendants to Drug Court programs. He quoted the New Jersey State Judiciary publication, "Drug Courts: A Plan for Statewide Implementation," for the proposition that the program is aimed at both punishing defendants for drug-related crimes and addressing the "root causes" of such crimes by ensuring proper drug rehabilitation where appropriate. The judge referenced the "Drug Court Manual," for the principle that the Program saves costs because it prevents recidivism and future offenses by helping defendants with their addiction.
The judge concluded that defendant qualified for special probation because his circumstances met the legislative purpose behind the program. He found that defendant was a drug addict and needed rehabilitation to control his addiction and not "re-offend." The judge also found that defendant committed the present offenses "while under the influence" of drugs and "to get money to support his heroin habit." He emphasized that defendant had committed "no acts of violence," and absent his addiction, could become a "productive" member of the community. See N.J.S.A. 2C:35-14(a). In essence, he found that the prosecutor's objection to admitting the defendant to the program constituted a "patent and gross abuse of discretion," because he used "inappropriate factors" in formulating his position and made a "clear error of judgment."
On July 12, 2002, defendant entered a negotiated guilty plea to an accusation embodying the offenses of August 8, 2001. The accusation charged defendant with possession of heroin, N.J.S.A. 2C:35-10(a)(1) (count one), possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count two), possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1), -5(b)(3) (count three), and possession of cocaine with intent to distribute within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1 (count four). Defendant executed a "waiver of indictment and trial by jury" and pled guilty to counts three and four. The prosecutor agreed to dismiss counts one and two and recommended a seven year sentence in the custody of the Commissioner of Corrections, "with 30 months parole ineligibility," pursuant to State v. Brimage, 153 N.J. 1, 706 A.2d 1096 (1998).[5] Defendant "reserve[d] his right to withdraw from his plea agreement if his sentence to the Morris County Drug Court Program is overturned by a higher court."
In entering the guilty plea, defendant admitted that he possessed fifty bags of cocaine, at least some of which he intended to "distribute" or "share . . . with other individuals." He also acknowledged that he was arrested with these bags in his possession in a playground that was within 500 feet of public housing.
The State's subsequent motion for reconsideration of the decision to admit defendant into the program was denied, and defendant was sentenced on August 1, 2002.
The judge merged the offenses for the purpose of sentencing and found that "aggravating factors on a straight sentence would outweigh the mitigating factors were it not for the Drug Court option." He sentenced defendant to seven years in *548 the custody of the Commissioner of Corrections with thirty months to be served before parole eligibility,[6] but thereupon suspended the sentence and placed defendant on probation for five years with "special conditions" related to completion of "the Morris County Drug Court Program." The judgment of conviction reads:
Defendant is placed on probation for a period of five years with the usual conditions, plus the following special conditions: complete the Morris County Drug Court Program, including but not limited to: enter and complete a six (6) month inpatient drug treatment program, complete all aftercare drug treatment programs; refrain from alcohol use; refrain from possession, use and distribution of CDS and associating with those who do; remain arrest free; refrain from possession of weapons; random urine monitoring; appear at all court proceedings and for appointments with drug court personnel; abide by all terms and conditions of probation and the drug court, including all the terms of the participation agreement.
The judge gave the following statement of reasons for the sentence:
This 43 year old defendant has pled guilty to one count each of possession of CDS with intent to distribute and possession of CDS with intent to distribute within 500 ft of a public park. He has a prior adult criminal history consisting of five felony convictions. The offenses are grounded in a continuing drug habit, an association with the drug culture and a financial need to deal with drug use. He is in need of probationary supervision with an inpatient drug treatment program followed by an intensive aftercare program. A period of incarceration is necessary to deter further criminal activity[;] however, if defendant successfully completes the Morris County Drug Court Program, the jail term of this sentence will be suspended. Defendant has a drug habit and he is sincere about getting the necessary help for his addiction. The court accepts the plea agreement due to the circumstances of the offense and the terms of the plea agreement which provides for entry into the Drug Court Program. In this regard, aggravating factors 3 (risk of reoffense)[,] 6 (prior criminal history)[,] & 9 (deterrence) apply and are outweighed by mitigating factor 10 (response to probation). Given their quality and nature, the mitigating factors preponderate over the aggravating factors. Defendant is legally and clinically eligible for Drug Court and is sentenced into that program based upon the circumstances and reasons set out in the presentence report and on the record at the time of sentencing and taking of the plea.[7]
The same day, the judge issued an "Order Staying Sentence" "pending the State's appeal to the Appellate Division." See N.J.S.A. 2C:35-14(c).
On August 6, 2002, the State filed its Notice of Appeal with this court, appealing the judgment "sentenc[ing] defendant to special probation (Drug Court) over the [p]rosecutor's objection." On September 23, 2002, further argument was conducted on the State's stay application before the trial judge. On October 9, 2002, the judge entered an order consistent with his oral opinion of September 23, 2002, which denied *549 a further stay of defendant's sentence pending a decision on appeal. The judge ordered defendant's transfer to a substance abuse program as soon as placement was made available. The order further provided:
FURTHER ORDERED nunc pro tunc that Paragraph One (1) of the Court's August 1, 2002 order is hereby amended to accurately reflect the Court's decision granting a limited ten (10) day stay of the imposition of the August 1, 2002 sentence to allow the State to file a Notice of Appeal pursuant to 2C:35-14(c).
In deciding this appeal, we emphasize that defendant has not moved to dismiss the appeal or argued that the appeal cannot be considered in light of the October 9, 2002 order. See, e.g., State v. Sanders, 107 N.J. 609, 620-22, 527 A.2d 442 (1987); State v. Ryan, 86 N.J. 1, 429 A.2d 332 (1981); State v. Watson, 183 N.J.Super. 481, 484, 444 A.2d 603 (App. Div.1982); R. 2:9-3(d),(e). See also State v. Nwobu, 139 N.J. 236, 257, 652 A.2d 1209 (1995).[8] The statute provides for a stay of sentence to permit the State ten days in which to appeal so that, in the event of an appeal, the sentence is stayed pending the appeal. N.J.S.A. 2C:35-14(c). We also note that, consistent with the Code's provisions governing suspension of sentence and probation, N.J.S.A. 2C:45-1, -2, the provisions of N.J.S.A. 2C:35-14, governing special probation for "Drug and Alcohol Dependent Persons," do not permit the imposition of a sentence and its suspension before imposing the probationary sentence. See, e.g., State v. Baylass, 114 N.J. 169, 553 A.2d 326 (1989); State v. Dove, 202 N.J.Super. 540, 495 A.2d 487 (Law Div.1985). N.J.S.A. 2C:35-14 contemplates that entry into the program be implemented by a "sentence of special probation," after a verdict or guilty plea, in which both the facts of the case and defendant's background are developed. See N.J.S.A. 2C:35-14(a) (referring to person "convicted of or adjudicated delinquent for an offense"), -14(c).
N.J.S.A. 2C:35-14 was amended in 1999 to provide for the program of "special probation." L.1999, c. 376, § 2.[9] To qualify for the Drug Court program and five year sentence of special probation, N.J.S.A. 2C:35-14(a) requires the court to find that defendant is "drug or alcohol dependent," committed the underlying offense while "under the influence" of a controlled dangerous substance, "did not possess a firearm" at the time of offense or any pending charge, and that defendant will "benefit" from the program which "will thereby reduce the likelihood that [he or she] will thereafter commit another offense." N.J.S.A. 2C:35-14(a)(1)-(5). Defendants convicted of certain offenses and charged with certain crimes are per se ineligible, N.J.S.A. 2C:35-14(a)(6),(7), and a licensed facility approved by the Department of Health must agree "to provide appropriate treatment services," N.J.S.A. 2C:35-14(a)(8). Moreover, the court must *550 find that "no danger to the community will result from the person being placed on special probation," N.J.S.A. 2C:35-14(a)(9). N.J.S.A. 2C:35-14(a) also requires that the court consider "all relevant circumstances" including those developed at "the trial, plea hearing or other court proceedings," as well as the "presentence report and the results of the professional diagnostic assessment to determine whether and to what extent the person is drug or alcohol dependent and would benefit from treatment." N.J.S.A. 2C:35-14(a).
Independent of N.J.S.A. 2C:35-14(a), the statute also lists other crimes for which a defendant is disqualified from the program, see N.J.S.A. 2C:35-14(b), which does not apply in this case, and charges for which the prosecutor must consent to enrollment, N.J.S.A. 2C:35-14(c).
N.J.S.A. 2C:35-14(b) and (c) provide:
b. A person shall not be eligible for special probation pursuant to this section if the person is convicted of or adjudicated delinquent for:
(1) a crime of the first degree;
(2) a crime of the first or second degree enumerated in subsection d. of N.J.S. 2C:43-7.2;[10]
(3) a crime, other than that defined in N.J.S. 2C:35-7, for which a mandatory minimum period of incarceration is prescribed under chapter 35 of this Title or any other law; or
(4) an offense that involved the distribution or the conspiracy or attempt to distribute a controlled dangerous substance or controlled substance analog to a juvenile near or on school property.
c. A person convicted of or adjudicated delinquent for an offense under section 1 of P.L.1987, c. 101 (C.2C:35-7), subsection b. of section 1 of P.L.1997, c. 185 (C.2C:35-4.1), or any crime for which there exists a presumption of imprisonment pursuant to subsection d of N.J.S. 2C:44-1, or any other statute, or who has been previously convicted of an offense under subsection a. of N.J.S. 2C:35-5 or a similar offense under any other law of this State, any other state or the United States, shall not be eligible for sentence in accordance with this section if the prosecutor objects to the person being placed on special probation. The court shall not place a person on special probation over the prosecutor's objection except upon a finding by the court of a gross and patent abuse of prosecutorial discretion. If the court makes a finding of a gross and patent abuse of prosecutorial discretion and imposes a sentence of special probation notwithstanding the objection of the prosecutor, the sentence of special probation imposed pursuant to this section shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution. (emphasis added).
Because of defendant's prior conviction under N.J.S.A. 2C:35-5 and the present conviction for a second degree crime, we also note that N.J.S.A. 2C:35-14(d) provides:
d. A person convicted of or adjudicated delinquent for a crime of the second degree or of a violation of section 1 of P.L.1987, c. 101 (C.2C:35-7), or who previously has been convicted of or adjudicated delinquent for an offense under subsection a. of N.J.S. 2C:35-5 or a similar offense under any other law of this State, any other state or the United States, who is placed on special probation under this section shall be committed to the custody of a residential treatment *551 facility licensed and approved by the Department of Health and Senior Services, whether or not residential treatment was recommended by the person conducting the diagnostic assessment. The person shall be committed to the residential treatment facility immediately, unless the facility cannot accommodate the person, in which case the person shall be incarcerated to await commitment to the residential treatment facility. The term of such commitment shall be for a minimum of six months, or until the court, upon recommendation of the treatment provider, determines that the person has successfully completed the residential treatment program, whichever is later, except that no person shall remain in the custody of a residential treatment facility pursuant to this section for a period in excess of five years.
The guilty plea in this case included the second degree crime of possession of CDS with intent to distribute within 500 feet of a public park in violation of N.J.S.A. 2C:35-7.1. That statute provides that any person possessing with intent to distribute or distributing a controlled dangerous substance within 500 feet of a public housing facility, a public park, or a public building is a second degree crime (with an exception with respect to marijuana). There is, therefore, a "presumption of imprisonment pursuant to subsection d of N.J.S. 2C:44-1," and the prosecutor had the right to object "to the person being placed on special probation." N.J.S.A. 2C:35-14(c). Accordingly, pursuant to the statute, the court could not place defendant on "special probation," because of the prosecutor's objection, "except upon a finding by the court of a gross and patent abuse of prosecutorial discretion." Ibid. Similarly, defendant had previously been convicted of a crime under N.J.S.A. 2C:35-5(a), and the same right of the prosecutor to object is applicable thereto. N.J.S.A. 2C:35-14(c).
The "patent and gross abuse of discretion" standard has evolved from our case law regarding PTI. Significantly, the standard was developed because PTI was initially adopted by court rule, R. 3:28, and to resolve the constitutional challenge resulting from the diversion and dismissal of criminal cases over prosecutorial objection. See State v. Leonardis, 73 N.J. 360, 371-76, 381-82, 375 A.2d 607 (1977). That standard was incorporated into the review of the denial of PTI applications when the pretrial intervention program was codified in the Code of Criminal Justice, N.J.S.A. 2C:43-12 and 13. See State v. Dalglish, 86 N.J. 503, 508-15, 432 A.2d 74 (1981) (finding legislative intent to maintain the standard and employing it notwithstanding the absence of separation of powers issue); see also State v. Wallace, 146 N.J. 576, 582, 684 A.2d 1355 (1996). Because of the long history, known to the Legislature, with respect to that standard, there is little doubt that the same construction of the term "patent and gross abuse of discretion" is applicable in connection with review of prosecutorial objections to admission into a Drug Court program and imposition of the conditions of probation pursuant to N.J.S.A. 2C:35-14(c).[11]See State v. N.I., 349 N.J.Super. 299, 319-20, 793 A.2d 760 (App.Div.2002), referring to the standard under N.J.S.A. 2C:35-14, *552 in connection with an application under R. 3:21-10(b).[12]
The trial judge in this case raised concern that the PTI standard may not be appropriate in reviewing the prosecutor's decision to oppose admission to a Drug Court program because the decisions take place at different stages of the proceedings. The judge asserted that a decision to admit a defendant to PTI comes before trial, thereby affecting the Executive Branch's authority to prosecute, while the decision to admit a defendant to a Drug Court program is essentially a sentencing decision. The judge suggested that the prosecutor's decision in denying PTI may be accorded more deference than opposition to admission to a Drug Court program because the former deals with the decision to prosecute. See State v. Leonardis, supra.
However, the Drug Court program and the ability to impose a specific sentence is a legislative matter, see, e.g., State v. Des Marets, 92 N.J. 62, 77-81, 455 A.2d 1074 (1983) (upholding Graves Act legislation preventing suspended sentences), and the question before us relates to the legislative intent concerning the availability of the disposition or sentence alternative. The Statement accompanying the 1999 amendments to N.J.S.A. 2C:35-14 declared that the "patent and gross abuse of discretion... formulation codifies the current standard of review used to determine whether a prosecutor inappropriately refused to join the defendant's application under current law." Statement, Senate Bill No. 1253, State of New Jersey, 208th Legislature; Assembly Law and Public Safety Committee Statement with Committee Amendments, December 2, 1999; Senate Law and Public Safety Committee Statement with Committee Amendments, January 25, 1999. The "patent and gross abuse of discretion" standard was well known to the Legislature in light of the history of PTI and, in any event, the meaning of the phrase was well-established in our case law, and was expressly adopted in this context.
To succeed on this appeal, therefore, "defendant must show that the prosecutor's decision `(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'" State v. Brooks, 175 N.J. 215, 225, 814 A.2d 1051 (2002) quoting State v. Bender, 80 N.J. 84, 93, 402 A.2d 217 (1979). Moreover, to rise to the level of "patent and gross abuse of discretion," it must be shown "that the prosecutorial error complained of will clearly subvert the goals underlying" the Drug Court program. Id. at 225-26, 814 A.2d 1051; see also, e.g., State v. Baynes, 148 N.J. 434, 445, 690 A.2d 594 (1997); State v. Wallace, 146 N.J. 576, 581-86, 684 A.2d 1355 (1996); State v. Nwobu, 139 N.J. 236, 253-54, 652 A.2d 1209 (1995). Thus, "a prosecutor's decision to reject a [Drug Court] applicant `will be rarely overturned.' " Brooks, supra, 175 N.J. at 226-26, 814 A.2d 1051, quoting Wallace, supra, 146 N.J. at 585, 684 A.2d 1355.
This case involves no disputed factfinding. The trial judge found that the prosecutor placed undue emphasis on the defendant's offenses, while ignoring his *553 addiction, thereby considering inappropriate factors. The judge stated that the defendant was "a suffering drug addict and he needs help." The judge, therefore, concluded that the prosecutor's opposition was a "clear error of judgment" because the defendant was "not a violent offender" and "not a danger to the community."
As noted at the outset, the State argues that it did not commit a "patent and gross abuse of discretion" in opposing the defendant's application to the Program for several reasons. The State insists its "decision makes sense" in light of defendant's "prior performance on probation and his attitude towards rehabilitation," and that the judge incorrectly found that it considered inappropriate factors by relying on its determination that the defendant was a drug dealer and the fact that the offense was committed in a public park. The State also claims that the judge ignored the finding by the program that the defendant's sale of drugs was "motivated by profit" and that defendant posed a "danger to the community," particularly because he engaged in drug dealing for profit. His defense expert Melahn noted in his evaluation that defendant "had in his possession 30-40 bags of Cocaine for the intent of distribution to obtain financial gain and support his Heroin addiction" and a separate bag "for personal use."
Like the development of R. 3:21-10(b) and R. 3:28 (PTI) programs in the 1970s and the Intensive Supervision Program in the 1980s and 1990s (ultimately enacted as N.J.S.A. 2C:43-11), the development of the Drug Court program is a significant and important initiative designed to avoid criminal activity and recidivism. While certain charges and convictions present disqualifications and prosecutorial consent is needed for others, prior convictions for possessory offenses under N.J.S.A. 2C:35-10 present no bar to admission. N.J.S.A. 2C:35-14(a)(6).[13] Hence, the program is designed to help the defendant with a history or record of possessory offenses, and, in turn, to protect the public from these offenders.[14] We express confidence that prosecutors share the most commendable goals of the program.
In this case, defendant had both a prior conviction under N.J.S.A. 2C:35-5 and pled guilty to a second degree crime. As a result, the prosecutor's consent to participation in the Drug Court program was required on both grounds. N.J.S.A. 2C:35-14(c). Significantly, the prosecutor's rejection was not based merely on defendant's prior conviction for violation of N.J.S.A. 2C:35-5, or because of the present charge of a second degree crime. See, e.g., State v. Caliguiri, 158 N.J. 28, 726 A.2d 912 (1999); State v. Baynes, supra (rejection cannot be based on offense alone). Rather, the articulated rejection, or lack of consent, was attributable to the totality of circumstances relating both to the defendant, including his prior unsuccessful opportunities for treatment on probation, and the specifics of the present offense which included possession of 50 bags of cocaine with intent to distribute in a public park. On that basis, and given *554 the nature of the offenses and the factual basis for defendant's ultimate guilty plea, we cannot say that "the prosecutor's decision could not have been reasonably made upon weighing the relevant factors" or constituted a patent and gross abuse of discretion. State v. Wallace, supra, 146 N.J. at 589, 684 A.2d 1355; State v. Nwobu, supra, 139 N.J. at 254, 652 A.2d 1209.
The matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] See also R. 2:3-1(b)(6) permitting appeals by the State where "provided by law."
[2] As a result, defendant was exposed in this case to an extended term with a mandatory ineligibility term under N.J.S.A. 2C:43-6f. See State v. Lagares, 127 N.J. 20, 601 A.2d 698 (1992); see also State v. Brimage, 153 N.J. 1, 706 A.2d 1096 (1998).
[3] Violation of probation proceedings were apparently commenced with respect to the probationary sentences being served at the time of this offense, and defendant's probation was "terminated." The Melahn report also notes that defendant served time on one or more violations of probation, but the record does not develop that fact.
[4] The report of defendant's expert supported the finding regarding the possession of a large quantity of cocaine for personal use. (Melahn noted defendant "met the DSM-IV criteria for Opioid Dependence" and was "using 2 bags of Heroin daily for 3-4 weeks up until the time of his current arrest.") However, as we will develop hereinafter, the application should have been considered after disposition of the charges in order to evaluate the proofs at trial or the factual basis for a guilty plea. Similarly, a disposition of ineligible or disqualifying charges in a manner favorable to defendant may permit eligibility.
[5] Defendant acknowledged eligibility for an extended term which was relevant to the sentence for third degree possession with intent to distribute.
[6] Although the judge merged the convictions, the propriety of which we do not address, he incorrectly imposed V.C.C.B. and D.E.D.R. penalties, lab fees and driver license suspension on both counts.
[7] We do not know the basis for reference to the plea agreement as providing for entry into the program.
[8] The trial court correctly noted that R. 2:9-3(e) only applies to enrollment in PTI. R. 2:9-3(d) only applies to appeals under N.J.S.A. 2C:44-1f(2), and was not amended since N.J.S.A. 2C:35-14(c) was enacted. We note that the judge stated that N.J.S.A. 2C:35-14(c) does not provide for stays pending appeal after the 10-day period provided therein. Neither does N.J.S.A. 2C:44-1f(2). We do not address these subjects or the fact defendant would be entitled to credits for time in the program upon reversal and imposition of a sentence of imprisonment.
[9] The defendant was arrested and charged after the 1999 amendments became effective on January 14, 2000. N.J.S.A. 2C:35-14b(2) was further amended in 2001, but that amendment is not relevant to this case. L.2001, c. 129, § 2. See n. 10.
[10] N.J.S.A. 2C:35-14(b)(2) was the subject of a 2001 amendment to conform with the amendments to the No Early Release Act, N.J.S.A. 2C:43-7.2. L.2001, c. 129, § 2.
[11] The Legislature is presumed to be aware of the contemporary construction of words that it includes in drafting statutes, Quaremba v. Allan, 67 N.J. 1, 14-15, 334 A.2d 321 (1975). Here, the Statement accompanying the 1999 amendments to N.J.S.A. 2C:35-14 expressly noted that the law incorporated the "patent and gross abuse of discretion" standard in the "current law." Cf. Rios v. Szivos, 354 N.J.Super. 578, 808 A.2d 868 (App.Div.2002) (Legislature adopted summary judgment model of Oswin case when enacting AICRA).
[12] The significance of prosecutorial discretion in the area of sentencing drug offenders otherwise subject to mandatory sentences has been emphasized by the Supreme Court's opinions in State v. Brimage, 153 N.J. 1, 24-25, 706 A.2d 1096 (1998), and State v. Lagares, 127 N.J. 20, 33, 601 A.2d 698 (1992) (using an "arbitrary and capricious exercise of prosecutorial discretion" standard). No issue is raised on this appeal challenging the Legislature's right to adopt the standard in this context.
[13] As we have noted, the prosecutor must consent where the conviction was for possession with intent to distribute. See N.J.S.A. 2C:35-14(c).
[14] The legislative intent was for the Drug Court Program to "break the cycle of crime and addiction by authorizing courts to compel drug and alcohol dependent persons to submit to the rigors of treatment." Statement, Senate Bill No. 1253, State of New Jersey, 208th Legislature, June 22, 1998; Assembly Law and Public Safety Committee Statement with Committee Amendments, December 2, 1999; Senate Law and Public Safety Committee Statement with Committee Amendments, January 25, 1999.